**Edna Ruth HART, et al.,
Plaintiffs/Appellants,**

v.

**CITY OF JOHNSON CITY, Tennessee,
Defendant/Appellee.**

Supreme Court of Tennessee,
at Knoxville.

Dec. 3, 1990.

 ⟜48(6)

Charlton R. DeVault, Jr., John S. McLellan, III, Michael May, Kingsport, for plaintiffs/appellants.

James H. Epps, III, City Atty., James D. Culp, Staff Atty., Johnson City, David H. Hornik, Evans, Jones & Reynolds, Nash-

ville, J. Wesley Edens, Bristol, for defendant/appellee.

## OPINION

ANDERSON, Justice.

This case requires this Court to determine the constitutionality of the 1984 amendment to Tenn.Code Ann. § 6–51–103—the statute authorizing suits to contest municipal annexations. The amendment permits property owners adjacent to property annexed by municipal ordinance to bring a quo warranto action contesting the reasonableness of the annexation. However, by population classification it excludes adjacent property owners in 81 of 95 Tennessee counties from the amendment's provisions.

The plaintiffs insist that the population classifications set out in the 1984 amendment are unconstitutional because they violate Article XI, Section 9 of the Tennessee Constitution [1], which provides that the Legislature shall by *general law* provide the exclusive method by which municipal boundaries may be altered.

The trial judge upheld the constitutionality of the 1984 amendment and dismissed the complaint on the ground that the plaintiffs, as adjoining property owners, lacked standing to file a quo warranto action because the annexation took place in Sullivan County, one of the counties excluded by the classification provisions of the 1984 amendment.

We conclude that the entire 1984 amendment violates Article XI, Section 9, the Municipal Boundaries Clause of the Tennessee Constitution, and is therefore unconstitutional for the reasons that follow.

## FACTS

The defendant, City of Johnson City, passed an ordinance annexing a portion of the Piney Flats community lying along Highway 11E in Sullivan County, Tennessee, in response to a petition initiated by property owners and residents of the Piney Flats community requesting the annexation. Johnson City is a municipal corporation maintaining its city offices in Washington County.

On May 20, 1988, plaintiffs, Sullivan County and certain individuals who own property bordering but not within the annexation area, filed a quo warranto suit in Washington County Chancery Court to challenge the reasonableness of the annexation ordinance. Prior to 1984, only aggrieved owners of property within the territory to be annexed could contest by quo warranto action an annexation ordinance. In 1984 the Legislature enacted Chapter 642, Public Acts of Tennessee, 1984, which amended Tenn.Code Ann. § 6–51–103 to allow adjoining property owners to contest annexation by ordinance as well, but excluded certain counties by population classifications. Sullivan County property owners are excluded from the standing conferred upon adjacent property owners by the express population classifications of the 1984 amendment. [2]

The pertinent parts of the challenged statute are set out below. The 1984 amendment language added by Chapter 642 of the Public Acts is underlined for clarity.

**6–51–103. Quo warranto to contest annexation ordinance—Appellate review.**—(a)(1)(A) Any aggrieved owner of property which borders or lies within territory which is the subject of an annexation ordinance prior to the operative date thereof, may file a suit in the nature of a quo warranto proceeding in accordance with this part, § 6–51–301 and title 29, chapter 35 to contest the validity thereof on the ground that it reasonably may not be deemed necessary for the welfare of the residents and property owners of the affected territory and the municipality as

---

1. The General Assembly shall by *general law* provide the exclusive methods by which municipalities may be created, merged, consolidated and dissolved and by which municipal boundaries may be altered. (Emphasis added).

2. The 1984 amendment excludes counties having a population between 100,000 and 250,000 as of the 1980 census. Sullivan County had a population of 143,968 as of the 1980 census.

a whole and so constitutes an exercise of power not conferred by law. . . .

(B) The provisions of this subdivision (a)(1) shall not apply to the counties covered by subdivision (a)(2).

(2)(A) Any aggrieved owner of property lying within territory which is the subject of an annexation ordinance prior to the operative date thereof, may file a suit in the nature of a quo warranto proceeding in accordance with this part and § 6–51–301 and chapter 35 of title 29, to contest the validity thereof on the ground that it reasonably may not be deemed necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole and so constitutes an exercise of power not conferred by law.

(B) The provisions of this subdivision (a)(2) shall apply only in counties having a metropolitan form of government and in counties having populations of:

| not less than | nor more than |
|---|---|
| 4,000 | 43,000 |
| 14,940 | 15,000 |
| 43,700 | 44,700 |
| 49,400 | 49,500 |
| 58,000 | 59,000 |
| 67,300 | 67,400 |
| 74,500 | 74,600 |
| 100,000 | 250,000 |
| 475,000 | 480,000 |
| 700,000 | . |

according to the 1980 federal census or any subsequent federal census, and in any county with a population of not less than two hundred eight-five thousand (285,000) and not more than two-hundred ninety thousand (290,000) based upon the 1980 federal census.

(b) The municipality shall have the burden of proving that an annexation ordinance is reasonable for the overall well-being of the communities involved.

(Emphasis added.) The 1984 amendment also contained a severability clause [3] which was not reprinted in the statute as codified.

---

**3.** If any provision of this act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to that end the provisions of this act are declared to be severable.
1984 Tenn.Pub.Acts 642.

The defendant, City of Johnson City, filed a motion to dismiss plaintiffs' suit on the grounds that the plaintiffs lacked standing to file an action contesting the annexation because they resided in Sullivan County, a county excluded from the 1984 amendment's provisions by population classification. The trial judge sustained the motion to dismiss, finding the 1984 amendment constitutional. From this judgment plaintiffs have appealed to this Court.

## ARGUMENT

The plaintiffs argue that the population classifications of the 1984 amendment unconstitutionally restrict the general right of adjoining property owners in certain counties from contesting an annexation. They insist Article XI, Section 9 of the Tennessee Constitution provides that the exclusive method of altering municipal boundaries is by general law, and that population classifications depriving Sullivan County property owners of a right granted to other county property owners cannot be constitutional and are irrational.

Johnson City argues that under the terms of the 1984 amendment, Sullivan County has no standing to file a quo warranto action contesting the annexation; that as a matter of law, an adjoining property owner cannot be aggrieved and therefore no population classification would be unconstitutional; and that the amendment is constitutional because the classification was reasonable.

## HISTORY

This Court has upheld the use of population classifications in legislation which has rendered general statutes applicable in several, but not all, counties in which the Court found a rational basis for the classification. *See, e.g., Bates v. Alexander,* 749 S.W.2d 742 (Tenn.1988) (upholding a statute requiring county registers to collect increased fees, except in the five most pop-

ulous counties in the state); *Baker v. State,* 191 Tenn. 559, 235 S.W.2d 435 (1950) (upholding an Act prescribing a special method of selecting juries in certain counties); *Reasonover v. City of Memphis,* 162 Tenn. 633, 39 S.W.2d 1029 (1931) (upholding Acts authorizing assessment of costs of street improvements in cities of more than stated populations); *Darnall v. Shapard,* 156 Tenn. 544, 3 S.W.2d 661 (1928) (upholding an Act relating to the licensing of dogs in certain counties).

We have also upheld legislation which has rendered general statutes applicable in only one county, where we found a rational basis for the classification. *See, e.g., Shelby County Civil Service Merit Bd. v. Lively,* 692 S.W.2d 15 (Tenn.1985) (upholding an act eliminating authority of county officials to terminate deputies, applicable solely in Shelby County); *Harwell v. Leech,* 672 S.W.2d 761 (Tenn.1984) (upholding a statute prohibiting the sale of fireworks, applicable only in Knox County); *Peterson v. Grissom,* 194 Tenn. 26, 250 S.W.2d 3 (1952) (upholding a "road law," applicable to only one county by virtue of population classification); *Elliott v. Fuqua,* 185 Tenn. 200, 204 S.W.2d 1016 (1947) (upholding a statute prohibiting the sale of pyrotechnics, applicable only in Davidson County); *Knox County v. State ex rel. Nighbert,* 177 Tenn. 171, 147 S.W.2d 100 (1940) (upholding the Teacher Tenure Act, applicable to Knox County alone); *cf. Canale v. Steveson,* 224 Tenn. 578, 458 S.W.2d 797 (1970) (invalidating for absence of rational basis, a statute forbidding "fortune telling," applicable only in Shelby County).

In each of the foregoing cases, the relevant statutes were challenged as violative of Article XI, Section 8 of the Tennessee Constitution, which provides that the legislature has no power to suspend any general law for the benefit of a particular individual inconsistent with the general laws of the land. Article XI, Section 8 has been interpreted as prohibiting passage of laws to benefit specific counties or cities as well as individuals, *White v. Davidson County,* 210 Tenn. 456, 360 S.W.2d 15 (1962), unless the special classification rests on a reasonable basis. *City of Chattanooga v. Har-*

*ris,* 223 Tenn. 51, 58, 442 S.W.2d 602, 605 (1969). *See also Stalcup v. City of Gatlinburg,* 577 S.W.2d 439 (Tenn.1978); *State ex rel. Brown v. Bates,* 553 S.W.2d 746 (Tenn. 1977); *Estrin v. Moss,* 221 Tenn. 657, 430 S.W.2d 345 (1968).

However, we have never upheld class legislation in *annexation* statutes. Such statutes are subject to an entirely different constitutional prohibition, the Municipal Boundaries Clause found in art. XI, § 9. *See* footnote 1, *supra.* The Municipal Boundaries Clause is couched in "unambiguous mandatory language," and was adopted to remedy "the great evils that had arisen in regard to the legislature enacting legislation affecting only one county or municipality." *Frost v. City of Chattanooga,* 488 S.W.2d 370, 373 (Tenn.1972).

Tennessee's modern municipal annexation law traces its origin to Sections 6–51–101 to –302 of Tennessee Code Annotated, initially passed in 1955 as the Legislature's response to the approval by the people of the municipal boundaries clause of the Tennessee Constitution. Tenn. Const. art. XI, § 9. Prior to the adoption of this clause, the extension of municipal boundaries was accomplished largely by private act of the state legislature. *See* Mendelson, *Suggestions for the Improvement of Municipal Law,* 8 Vand.L.Rev. 1, 3 (1954).

The 1955 annexation act contemplates two primary and distinct methods of annexation: by ordinance and by referendum. *See* Tenn.Code Ann. § 6–51–102 and § 6–51–104. In addition, it contains several general provisions to govern the annexation process, including the quo warranto statute in question (§ 6–51–103), which provides a means of contesting the reasonableness of the annexation ordinance.

This Court has considered three attempts by the General Assembly to revise the 1955 Annexation Act by enacting amendments containing population-based classifications. Each such attempt has been held unconstitutional.

In the first such attempt, in 1971, the General Assembly allowed Hamilton County to levy reduced taxes in newly annexed

territories commensurate with the municipal services that the annexed territory would receive. The amendment was applicable only to cities over 100,000 in population, but made inapplicable to Knox and Shelby Counties by population classification and inapplicable to Davidson County by excluding counties that have metropolitan government. As a result, it applied only to Hamilton County. This amendment was declared unconstitutional by this Court in *Frost v. City of Chattanooga, supra.* In *Frost,* we said that

> [w]e do not hold that the Legislature could not act to alter municipal boundaries by legislation valid as a general law under the classification doctrine, but we are not able to conceive of any circumstances where such would be valid.

*Id.* at 373.

The second attempt was in 1974. The General Assembly enacted an amendment which excluded certain cities from the burden upon the municipality to prove "that an annexation ordinance is reasonable for the overall well-being of the communities involved." This amendment was declared unconstitutional in *Pirtle v. City of Jackson,* 560 S.W.2d 400 (Tenn.1977), because it applied only in counties having a population of not less than 65,000 nor more than 66,000, and counties having a population of 400,000 or more, according to the federal census of 1970, and in counties having a metropolitan form of government. In *Pirtle* we said that

> [n]o rational basis has been suggested, nor does any occur to us, to justify the exclusion of a few chosen municipalities from the burden of proving the reasonableness of their annexation ordinances when such a burden is placed upon all other municipalities by the general law of this state.

*Id.* at 402.

Again, in 1981, the General Assembly enacted another amendment which permitted residents of an annexation area to demand a referendum, but limited the coverage to certain counties by population classification. This amendment was declared un-

constitutional in *Vollmer v. City of Memphis,* 730 S.W.2d 619 (Tenn.1987).

## 1984 AMENDMENT

■ Finally, in 1984 the General Assembly enacted Chapter 642 § 1, 1984 Tenn. Pub.Acts 302 (codified as amended at Tenn. Code Ann. § 6–51–103(a) (1985)), which amended the quo warranto statute to grant standing to owners of property adjacent to proposed annexations, to contest the reasonableness of the ordinance. This amendment contains population-based classifications which exclude property owners in 81 counties from the right to contest the annexation ordinance.

The trial judge said there were facts which could reasonably be conceived to justify a classification between more populous and less populous counties, but he did not say what they were. The record does not set out any such facts, nor does the reason for the population classification appear in the language of the Act. In *Knoxville's Community Development Corp. v. Knox County,* 665 S.W.2d 704, 705 (Tenn.1984), this Court said:

> The amendment states no reasons why there should be a departure from the general law in counties falling within the specified population bracket, nor was any factual basis for the classification developed in the trial of this case.

As a result, we struck down a statutory amendment containing a classification based on population brackets.

■ There is no general rule by which to distinguish a reasonable from an unreasonable classification, the question being a practical one varying with the facts of each case. *Stalcup v. City of Gatlinburg,* 577 S.W.2d 439 (Tenn.1978). The burden of showing that a classification does not rest upon a reasonable basis is on the complainant. The legislation will be upheld if a reasonable basis for the classification can be conceived or is fairly debatable. *Estrin v. Moss,* 221 Tenn. 657, 430 S.W.2d 345 (1968).

We have reviewed the legislative history of the 1984 amendment which added standing to sue for adjacent property owners to

that already possessed by owners of property lying within territory which was to be the subject of annexation. The legislative debate indicates that the announced purpose was to prevent strip annexation. No rational basis was ever suggested in the legislative debate for population classification. There was simply a desire by the vast majority of counties not to be covered by the amendment and population classification was the method chosen to exclude such counties.

As we determine whether a rational basis exists for the population classifications in the 1984 amendment, we note that adjacent property owners in Sullivan County (population 143,968) are prohibited from contesting an annexation in Sullivan County by neighboring Johnson City, located in Washington County, while Washington Countians (population 88,755) who are adjacent property owners are allowed to contest Johnson City's annexation. Similarly, adjacent property owners in Blount County (population 67,574) may challenge an annexation by Maryville, while adjacent property owners in Anderson County (population 67,346) are prohibited from challenging an annexation effort by the City of Oak Ridge. However, in neighboring Roane County (population 48,425) adjacent property owners may challenge an annexation effort by the City of Oak Ridge, which is located in both Roane and Anderson Counties. Adjacent property owners in Sevier County (population 41,418), Putnam County (population 47,601), Carter County (population 50,205), and Maury County (population 51,095) are also numbered in the magic 14 counties in which adjacent property owners are permitted to challenge annexation attempts by cities, while the other 81 counties in the state are not.[4]

There is no evidence the 14 county class was created according to any plan, rational or otherwise; rather, the class appears to have been created at random and by default.

Accordingly, we find no rational basis for the population classifications in the 1984 amendment to Tenn.Code Ann. § 6–51–103. We hold, therefore, that the population classifications contained in the 1984 amendment (Chapter 642, 1984 Tenn.Pub.Acts 302) to Tenn.Code Ann. § 6–51–103 are prohibited by the Municipal Boundaries Clause, art. XI, § 9 of the Tennessee Constitution.[5]

### ELISION REMEDY

■ The plaintiff property owners invite us to strike out the offensive population-based exclusions contained in subsection (a)(2)(B) of the statute and to declare unconstitutional Tenn.Code Ann. § 6–51–103(a)(1)(B), (a)(2)(A), and (a)(2)(B). The effect of this would be to leave Tenn. Code Ann. § 6–51–103(a)(1)(A) intact and to create standing for adjacent property owners in all Tennessee counties to contest municipal annexation ordinances. The Attorney General also urges this Court to apply the doctrine of elision to the 1984 Act.

In *Frost* we refused an invitation that "the void provisions be elided and the remainder of the Act be sustained." 488 S.W.2d at 373. We said there is a "presumption against sustaining the remaining part of a statute where a part of the statute is held unconstitutional." *Id.* at 373

---

**4.** The 14 counties within the provisions of the 1984 amendment are:

| | | | |
|---|---|---|---|
| Blount | 77,770 | Montgomery | 83,342 |
| Bradley | 67,547 | Putnam | 47,601 |
| Carter | 50,205 | Roane | 48,425 |
| Greene ˙ | 54,406 | Rutherford | 84,058 |
| Hamblen | 49,300 | Sumner | 85,790 |
| Knox | 319,694 | Washington | 84,755 |
| Maury | 51,095 | Wilson | 56,064 |

(County populations refer to the 1980 census figures in Volume 13 of Tennessee Code Annotated, at p. 824.)

**5.** Since the population-based classifications in the 1984 amendment applied only to adjacent property owners, our holding leaves intact the standing of owners of property within annexation areas to contest the reasonableness of an-

(citation omitted). To create judicially "a proper class would be judicial legislation." *Id.* (citation omitted). We also observed that " 'where a clause is so interwoven with other portions of an act as that we cannot suppose that the legislature would have passed the act with that clause omitted, then if such clause is declared void, it renders the whole act null.' " *Id.* (citation omitted).

In *Vollmer, supra,* this Court invalidated, under the municipal boundaries clause of the Tennessee Constitution, a 1981 Public Act because it was tainted by constitutionally impermissible classifications by population. We reiterated the standards applicable to the doctrine of elision, saying:

> On the issue of whether the classification portion of chapter 522 could be stricken and the remainder of the Act upheld, we conclude that this cannot be done. There is a presumption against sustaining the remaining part of a statute where a part has been declared unconstitutional.... Generally, where a part of a statute is so interwoven with other portions of the Act so that we cannot suppose that the legislature would have passed the Act with that part omitted, a finding that the part is unconstitutional renders the whole Act void.... We hold that the legislature would not have passed Chapter 522 without the illegal classification as herein summarized. If we held the remainder of the Act constitutional, we would be creating a proper class which would be judicial legislation....

730 S.W.2d at 622 (citations omitted).

In this case, for the same reasons we cannot strike the population classification portion of the 1984 amendment and uphold the remainder of the Act. The classification portion of the statute is an integral part of the Act, and we believe the General Assembly would not have passed the 1984 amendment without the constitutionally impermissible population classifications, since 81 of the 95 counties excluded themselves from the Act. If we accept the invitation to apply the doctrine of elision, we would

be creating a population class of all 95 Tennessee counties in order to uphold the Act, and we would be including 81 counties which were expressly excluded from the Act by their elected representatives. This is clearly a result the General Assembly did not intend, and it assuredly would be judicial legislation. This we decline to do. Elision is not appropriate in this case.

For the foregoing reasons, we conclude Chapter 642, Public Acts of Tennessee, 1984, the amendment to Tenn.Code Ann. § 6–51–103, is unconstitutional in its entirety. It follows that the trial court judgment is reversed and the cause is remanded. Costs incident to the appeal are adjudged against the plaintiffs/appellants.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.

---

nexation ordinances, which existed before the    1984 amendment.