FOR PUBLICATION

IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

**FILED**

**April 27, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

STATE OF TENNESSEE, EX REL. ROBERT (
J. EARHART, ET AL.,                    (
                                       (
    Plaintiffs-Appellants,             (
                                       ( Sullivan Chancery
                                       (
v.                                     ( Hon. Thomas J. Seeley, Jr.,
                                       ( Judge (Sitting by Interchange)
                                       (
                                       ( S. Ct. No. 03S01-9709-CH-00116
CITY OF BRISTOL, TENNESSEE,            (
                                       (
    Defendant-Appellee.                (


For Plaintiffs-Appellants:

David H. Hornik
Nashville

David L. Buuck
Knoxville

For Defendant-Appellee:

Jack W. Hyder, Jr.
Massengill, Caldwell, and
   Hyder, P.C.
Bristol

Amicus Curiae:

Tennessee Municipal
   Attorneys' Association
Debra C. Poplin
Knoxville

**O P I N I O N**

JUDGMENT OF COURT OF APPEALS
AFFIRMED IN PART AND
REVERSED IN PART;
CASE REMANDED TO TRIAL COURT.                    REID, J.

I

The issues presented had their origin in two annexation ordinances adopted by the City of Bristol in 1989.  The ordinances undertook to annex the right-of-way of Highway 11E extending approximately four miles south from the city limits of Bristol into the Piney Flats area.  The area included no property other than the highway right-of-way.

In 1991, Bluff City adopted an ordinance annexing the Piney Flats area, including a portion of Highway 11E included in the 1989 Bristol ordinances.  Bristol filed suit against Bluff City contesting the latter's action.  In that suit, Bristol relied upon Tenn. Code Ann. § 6-51-110(b), which gives a larger municipality priority with respect to competing claims to annex the same area. Bluff City counterclaimed on the grounds that Bristol's 1989 ordinances were void.  The trial court, under the Declaratory Judgment Act, held that Bristol's annexation was illegal and void. The Court of Appeals decided the issue on a third legal basis, Bluff City's claim was not filed within 30 days of the date Bristol's ordinance was adopted.  The application for permission to appeal was denied.

On January 11, 1995, Bristol adopted 24 annexation ordinances, pursuant to which it undertook to annex 24 separate parcels of property adjacent to that portion of Highway 11E included in Bristol's 1989 ordinances.  The right-of-way of portions of Egypt Road and Highway 390 which intersect with Highway 11E were included also.  Within 30 days, the plaintiffs, owners of 15 of the 24 parcels

filed a quo warranto and declaratory judgment suit contesting the annexations. Owners of one of the parcels voluntarily dismissed their claims, leaving 14 parcels at issue. The complaint, which originally charged that the ordinances were unreasonable within the meaning of Tenn. Code Ann. § 6-51-103(a)(1)(A) (1992) was amended to charge that 16 of the ordinances, the 14 ordinances previously named as well as two additional ordinances, were illegal on the grounds that they constituted prohibited corridor annexations and that the 1989 highway right-of-way annexation was "null and void" under Tenn. Code Ann. § 6-51-102 (1992) because it did not annex people, private property or commercial activities. The amended complaint also alleged that the illegality of the 1989 ordinances rendered all of the 1995 ordinances illegal because the tracts were not contiguous t the municipal boundary. In a separate case, which was consolidated with the case before the Court for trial, Bluff City attacked the validity of five of the ordinances, including three which were not challenged by the plaintiffs, bringing the total of the challenged 1995 ordinances to 19.

The jury considered the ordinances separately and found that 14 of the 19 annexations were reasonable. However, the trial judge found that nine of those 14 were void as a matter of law. Two of the ordinances found to be void were those undertaking to annex the rights-of-way of Egypt Road and Highway 390, and the other seven affected parcels did not adjoin the City of Bristol "except by benefit of the right-of-way of U.S. Highway 11E." The court held that an annexation ordinance which does not include people or private

-3-

property and, therefore, cannot be challenged because no one has standing to sue, "has no force" and is "void." That court further held that the validity of such ordinances "can be attacked any time," and that the 1989 right-of-way by the City of Bristol was void. The court stated: "Using a road right-of-way to boot strap the city into a position of saying that the newly annexed area adjoins the old area is a mere subterfuge." Despite these findings, the trial court granted Bristol's motion for a new trial and a different judge as to the 14 ordinances found to be invalid, stating as authority State ex rel. Sullivan County v. City of Bristol (Tenn. App. August 30, 1995). The five ordinances challenged by Bluff City were disposed of by settlement. At a new trial held in January 1996, the jury found all 9 remaining ordinances to be reasonable. The trial court approved the jury's findings, found that the plaintiffs were not entitled to declaratory relief, and declined to issue a declaratory judgment regarding the validity of the 1989 ordinances.

On appeal, the Court of Appeals affirmed the jury verdict as to each ordinance and held that the trial court did not abuse its discretion in declining to issue a declaratory judgment regarding the validity of the 1989 ordinances. The court stated, however, that the validity of the 1989 ordinances could be challenged as a void act of a municipality.

**II**

The order granting the application for permission to

appeal limited the appeal to two issues:

> Whether the Court of Appeals correctly permitted the appellant to collaterally challenge the 1989 annexation ordinance outside of the quo warranto procedures as set forth in Tenn. Code Ann. § 6-51-103, and whether the Court of Appeals correctly ruled that the trial court did not abuse its discretion in declining to issue a declaratory judgment concerning the 1989 annexation.

In finding that the validity of the 1989 ordinances, as opposed to their reasonableness, could be attacked at any time, the Court of Appeals rejected Bristol's argument that an annexation ordinance may be challenged only by quo warranto pursuant to Tenn. Code Ann. § 6-51-103. That court reasoned that "the statute presupposes a valid ordinance, which, if void, can be challenged as any other void act of the municipality."

In response, Bristol contends that an annexation ordinance becomes immune to direct or collateral attack upon the expiration of 30 days after its adoption if no contest is filed within that time by an "affected landowner." Its rationale is that the validity of the ordinance is "subsumed" in the question of its reasonableness.

This case demonstrates that, if Bristol's rationale is accepted, there can be no effective judicial review of annexation ordinances that utilize the highway right-of-way approach. Since the 1989 ordinances did not include any "people, private property, or

commercial activities,"[1] no one had standing to contest the ordinances;[2] consequently, they became inviolate even if done by "exercise of power not conferred by law."[3]  Subsequently, separate ordinances annexing separate parcels of property could be adopted so long as each parcel adjoins the highway right-of-way included in the prior ordinances.  In this case, additional rights-of-way along Egypt Road and Highway 390 were annexed, allowing parcels adjoining those roads to be annexed by subsequent ordinances.  Then the only basis for attack is whether the annexation of a particular parcel is "reasonable."  Under this annexation scenario, there could be no attack on the overall plan because the original right-of-way annexation ordinance cannot be questioned as to validity or reasonableness.  Even a flagrant usurpation of power by the city under the guise of adopting an annexation ordinance could stand unchallenged, according to Bristol's rationale.

Nevertheless, Bristol insists that the legal propositions it espouses represent the intent of the legislature and have been validated by this Court.

**III**

The first issue for review is whether the Court of Appeals

---

[1] See State ex rel. Collier v. City of Pigeon Forge, 599 S.W.2d 545, 547 (Tenn. 1980).

[2] See City of Gallatin v. City of Hendersonville, 510 S.W.2d 507, 509 (Tenn. 1974).

[3] See Tenn. Code Ann. § 6-51-103 (a)(1)(A).

correctly permitted the plaintiffs to collaterally challenge the 1989 annexation ordinance outside of the quo warranto procedures set out in Tenn. Code Ann. § 6-51-103.

The legislature has the authority to "extend or contract municipal boundaries" and that power has not been delegated to the courts. Witt v. McCanless, 200 Tenn. 360, 292 S.W.2d 392, 396 (1956). Article XI, § 9 of the Tennessee Constitution specifically granted this authority to the legislature: "The General Assembly shall by general law provide the exclusive methods by which municipalities may be created, merged, consolidated and dissolved and by which municipal boundaries may be altered." However, under the statutes, the Court is "given the power to determine whether the ordinance is reasonable or unreasonable," and whether the statutory requirements have been complied with. Witt v. McCanless, 292 S.W.2d at 396. In construing the applicable provisions to ascertain whether the actions of the municipality are in compliance with the statute, this Court must ascertain and give effect to the legislative intent and the ordinary meaning of the language of the statutes. Carson Creek Vacation Resorts, Inc. v. Dept. of Revenue, 865 S.W.2d 1, 2 (Tenn. 1993). Unambiguous statutes must be construed to mean what they say. Montgomery v. Hoskins, 222 Tenn. 45, 47, 432 S.W.2d 654, 655 (1968). The "legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used . . . without any forced or subtle construction to limit or extend the import of the language." Worrall v. Kroger Co., 545 S.W.2d 736, 738 (Tenn. 1977); State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993).

But, statutes "are not to be construed so strictly as to defeat the obvious intention of the legislature." State v. Netto, 486 S.W.2d 725, 728 (Tenn. 1972) (citing Southern Ry. v. Sutton, 179 F. 471 (1910)).

The original statutes authorizing a municipality's annexation of property by ordinance were enacted in 1955. "Before their passage, annexation of property by municipality could be accomplished only under Private Act of the Legislature." Joe M. Looney, Municipalities - Judicial review of Annexation, 36 Tenn. L. Rev. 825 (1969). The statutes extended a limited authority to annex territory to municipalities, providing that a municipality "by ordinance, may extend its corporate limits by annexation of such territory adjoining its existing boundaries as may be deemed necessary for the welfare of the residents and property owners of the affected territory as well as the municipality as a whole . . . ." Tenn. Code Ann. § 6-51-102(a)(1) (1992). This may be done "when petitioned by a majority of the residents and property owners of the affected territory, or upon its own initiative . . . ." Id. If annexation is the result of the municipality's own initiative, it can be justified only if "it appears that the prosperity of such municipality and territory will be materially retarded and the safety and welfare of the inhabitants and property endangered . . ." unless the area is annexed. Id. This section also provides "that the ordinance shall not become operative until thirty (30) days after final passage thereof." Id.

At the same time the authority to annex territory was delegated to municipalities, the provision allowing owners of property in the annexed area to challenge the reasonableness of the annexation was enacted. That provision, currently found at section 6-51-103, (after deleting the language of the 1984 amendment which has been held to be unconstitutional[4]) provides:

> (a)(1)(A)  Any aggrieved owner of property lying within territory which is the subject of an annexation ordinance prior to the operative date thereof, may file a suit in the nature of a quo warranto proceeding in accordance with this part . . . to contest the validity thereof on the ground that it reasonably may not be deemed necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole and so constitutes an exercise of power not conferred by law. . . .

Tenn. Code Ann. § 6-51-103 (1980).

Under the clear language of the statute, suits for quo warranto on the grounds that the annexation is not reasonably necessary to the safety and welfare of the inhabitants and property involved, are limited to persons owning property within the territory; and, once a quo warranto suit is appealed and found valid, the judgment of the appellate court is final and "not . . . subject to contest . . . ."  Tenn. Code Ann. § 103(d) (1992).  Generally, "[a] judgment in quo warranto, like other judgments, is conclusive upon the parties and their privies."  65 Am. Jur. 2d Quo Warranto § 121 (1972).  "By requiring that the State bring such a proceeding, we

---

[4]See Hart v. City of Johnson City, 801 S.W.2d 512, 516 (Tenn. 1990).

avoid the specter of numerous successive suits by private parties attacking the validity of annexations. . . . These problems are avoided by requiring _quo_ _warranto_ proceedings because the judgment settles the validity of the annexation on behalf of all property holders in the affected area." Alexander Oil Co. v. City of Seguin, 825 S.W.2d 434, 437 (Tex. 1991).

But, where the _quo_ _warranto_ proceeding is not available, alternative equitable remedies are not barred. "[W]here the remedy by _quo_ _warranto_ is available, it is usually held that there is no concurrent remedy in equity, unless by virtue of statutory provision. But if _quo_ _warranto_ is not an adequate remedy, it will not be a bar to alternative remedies." 65 Am. Jur. 2d Quo Warranto § 7 (1972). The availability of other remedies is specifically acknowledged in section 6-51-113 (1992), which provides, "Except as specifically provided in this part, the powers conferred by this part shall be in addition and supplemental to, and the limitations imposed by this part shall not affect the powers conferred by any other general, special or local law." The Tennessee Declaratory Judgment Act is just such another general law conferring the power to challenge the validity and construction of statutes and municipal ordinances. Under the Declaratory Judgment Act,

> Any person . . . whose rights, status, or other
> legal relations are affected by a statute, [or]
> municipal ordinance, . . . may have determined
> any question of construction or validity arising
> under the . . . statute, [or] ordinance, . . .
> and obtain a declaration of rights, status or
> other legal relations thereunder.

Tenn. Code Ann. § 29-14-103 (1980).

Bristol presents no authority for the proposition that persons who did not own property within the territory annexed are bound by the 30 day rule of Tenn. Code Ann. § 6-51-103(c).  The cases they present concerning the 30 day requirement involve plaintiffs who had standing to sue under the statutes because they owned property within the territory being annexed, but neglected to file suit within the time allowed.  See e.g., City of Oak Ridge v. Roane County, 563 S.W.2d 895 (Tenn. 1978); Brent v. Town of Greeneville, 203 Tenn. 60, 309 S.W.2d 121 (1957).  Bristol relies on City of Gallatin v. City of Hendersonville, 510 S.W.2d 507 (Tenn. 1974) and State ex rel. Kessel v. Ashe, 888 S.W.2d 430 (Tenn. 1994), for the proposition that a person or entity who does not own property being annexed has no standing to challenge the annexation.  The holdings in these cases affirm the clear meaning of the statute, and it is that law which prevented the plaintiffs from challenging Bristol's 1989 ordinance by quo warranto.  However, that law does not deny standing to the present plaintiffs to contest the 1989 ordinances or the 1995 ordinance.  The distinguishing fact is that the plaintiffs before this Court, do own property in territory presently being annexed as an offshoot of the 1989 ordinance which could not be challenged.

This Court has stated that the statute "authorizes a court contest on only one ground - whether the annexation is reasonably necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole."  City of Oak

*Ridge v. Roane County*, 563 S.W.2d at 897.  However, in that case, the Court did not discuss the remedies available under "other general, special or local law."  Tenn. Code Ann. § 6-51-113.  It merely considered the right to file a *quo warranto* suit established under the statute:

> We hold that the right to bring a suit pursuant to the authority of Tenn. Code Ann. § [6-51-103] to review any issue arising out of the adoption of an annexation ordinance authorized in Tenn. Code Ann. § [6-51-102] expires thirty days after the operative date of the ordinance, the courts have no jurisdiction of such suits thereafter.

*Id*. at 898 (emphasis added).

Other states have allowed challenges to municipal annexation ordinances outside of a *quo warranto* action.  In the case of *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436 (Tex. 1991), the court stated "The only proper method for attacking the validity of a city's annexation of territory is by *quo warranto* proceeding, unless the annexation is wholly void."  The Texas court found the ordinance valid, but recognized several instances in which annexation ordinances were held void through a private challenge, stating, "The common trait in these cases is whether the municipality exceeded the annexation authority delegated to it by the Legislature."  *Id*. at 438.

A similar situation was presented in the case of *People ex rel. Coojar Realty Corp. v. Village of Burr Ridge*, 225 N.E.2d 39

(Ill. App. Ct. 1967), in which a <u>quo</u> <u>warranto</u> proceeding was filed challenging not only the annexation of the relator's property, but also a prior annexation of a highway which was used as the "contiguous" property for the subsequent annexation.  The court held, "The annexation of relator Coojar's property here is dependent on the validity of the prior annexation of the portion of Route 66 . . . . . We hold that such roadway annexation as here attempted is invalid." <u>Id</u>. at 41.

The majority of courts have interpreted the requirement that the annexed land be "contiguous," to not allow the annexation of thin strips of land to connect a larger parcel of land to a municipality.  <u>State ex Rel. Dept. of Transp. v. City of Milford</u>, 576 A.2d 618, 622 (Del. Ch. 1989) (see cases cited therein).  These decisions articulate the principle implicit in the Tennessee statute.  The validity of an annexation ordinance alleged to exceed the authority delegated by the legislature is subject to challenge under the Declaratory Judgment Act.  And whereas Bristol is correct in contending that objections to reasonableness under section 6-51-102 must be filed within 30 days, that limitation does not apply to suits contesting the validity of an ordinance which purports to annex an area that does not include people, private property, or commercial activity.  <u>See</u> <u>State ex rel. Collier v. City of Pigeon Forge</u>, 599 S.W.2d 545 (Tenn. 1980).

Accordingly, the Court of Appeals correctly permitted the plaintiffs to challenge the 1989 annexation ordinance outside of the

quo warranto procedures of Tenn. Code Ann. § 6-51-103.

**IV**

The second issue is whether the trial court abused its discretion in declining to issue a declaratory judgment concerning the 1989 annexation.  Under the statute, the trial judge does have discretion as to a declaratory judgment ruling:

> The court may refuse to render or enter a declaratory judgement or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceedings.

Tenn. Code Ann. § 29-14-109 (1980).  This Court has stated that whether to entertain a declaratory judgment action is, in certain situations, largely discretionary with the trial judge.  In a case where there was "very voluminous testimony," the court held that the "judge had discretion not to undertake a detailed delineation of priorities between liens asserted."  East Sevier County Utility District v. Wachovia Bank and Trust Co., 570 S.W.2d 850, 852 (Tenn. 1978).  In that case, however, the Court held that after refusing to determine the priority of the liens, the suit should have been dismissed without prejudice so that the petitioner could have asserted its liens in a proper hearing.  The trial court's discretion in refusing a declaration is "very wide," Standard Accident Insur. Co. v. Carvin, 217 Tenn. 662, 400 S.W.2d 235, 236 (1966), and will not be disturbed on appeal unless the trial judge has acted

arbitrarily. <u>Southern Fire and Cas. Co. v. Cooper</u>, 200 Tenn. 283, 292 S.W.2d 177, 178 (Tenn. 1956). In <u>Carvin</u>, the action was brought to determine who was driving a car at the time of the accident. The Court found that a declaration of rights "may properly be refused if it can be made only after a judicial investigation of disputed facts," and that it is "contrary to the spirit and purpose of the Declaratory Judgments Law that a party should be delayed in the prosecution of an accrued cause of action until the termination of a proceeding brought for a declaratory judgment." <u>Id</u>. at 236-37 (quotations omitted). And in <u>Cooper</u>, where again a tort action was pending, the Court was asked whether the trial court's refusal to declare whether an insurance company was required to defend an action where the insured had delayed giving the insurance company notice of the accident, was an abuse of discretion. The Court found that "the refusal of the Court to declare the insurer's obligations within the premises need not prejudice whatever right, if any, it has by reason of the alleged delay of insured in giving notice of the accident." <u>Southern Fire and Casualty Co. v. </u>Cooper, 292 S.W.2d at 178. The Court held that because the equitable remedy was not necessary to prevent irreparable loss, and because such an action would delay the prosecution of the underlying cause of action, the trial court had not acted arbitrarily in its refusal. <u>Id</u>. at 178-79.

At issue here, is whether Bristol's somewhat ingenious annexation scheme is consistent with the purpose sought to be accomplished by the statutes authorizing municipalities to determine their own boundaries. That purpose was discussed by the Court in

-15-

State ex rel. Collier v. City of Pigeon Forge, 599 S.W.2d 545 (Tenn. 1980):

> The whole theory of annexation is that it is a device by which a municipal corporation may *plan for its orderly growth and development.* Heavily involved in this is control of *fringe area developments* and zoning measures to the end that areas of unsafe, unsanitary and substandard housing may not "ring" the City to the detriment of the City as a whole. In a word, annexation gives a city some *control over its own destiny.* The preservation of property values, the prevention of the development of incipient slum areas, adequate police protection within a metropolitan area, and the extension of city services to those who are already a part of the city as a practical proposition, are the legitimate concern of any progressive city. (Emphasis supplied).

Id. at 547 (quoting City of Kingsport v. State ex rel. Crown Enterprises, Inc., 562 S.W.2d 808, 814 (Tenn. 1978)). The focus of the Court's statements was the validity of an annexation of a strip of land along a highway:

> We should emphasize that this is not, as appellants insist, merely a "strip" or "shoestring" or "corridor" annexation, although it is long and lean. Such annexations, so long as they take in people, private property, or commercial activities, and rest on some reasonable and rational basis, are not per se to be condemned. We do not deal with an annexation wherein a city attempts to run its corporate limits down the right-of-way of an established road without taking in a single citizen or a single piece of private property.

>                         Such an annexation is perhaps
>                         questionable and is not here involved.
>                         As in any annexation, and more
>                         particularly one wherein a
>                         geometrically irregular parcel of land
>                         is annexed, the Court must scrutinize
>                         the stated and ostensible purpose of
>                         the annexation.

Id. at 546-47. The purpose of the statute and the procedure available for implementing that purpose also were discussed in Hart v. City of Johnson City, 801 S.W.2d 512 (Tenn. 1990). There, the plaintiffs challenged an amendment to Tenn. Code Ann. § 6-51-103, which was adopted by the legislature in 1984, and provided standing to file quo warranto actions to residents and owners of property adjoining a proposed annexation in certain counties based on a population classification. That act was declared unconstitutional because the Court found there was no rational basis for the population classifications. The Court stated: "The legislative debate indicates that the announced purpose [of the amendment] was to prevent strip annexation." Hart v. City of Johnson City, 801 S.W.2d at 517. The purpose of the original statute would not have been affected by the amendment, which only expanded the class of affected persons authorized to file quo warranto proceedings. Consequently, even though the statute was found to be unconstitutional, the determination by the Court that the purpose of the statute was to prevent "strip annexation" is relevant to the inquiry before the trial court of whether the 1989 annexation was void because it exceeded the authority of the municipality.

        This question does not concern disputed facts or the delay

of another cause of action. Therefore, the cases relied upon by Bristol do not support the trial court's decision to refuse to issue a declaratory judgment. In the case before the court, a declaratory judgment would "terminate" the controversy. Where there is presented a significant issue that needs resolving, as in this case, refusing to issue a declaratory judgment cannot be excused on the basis of discretion. This case involves an important issue of law affecting the growth of cities throughout the state which needs to be resolved. The same considerations which prompted this Court to grant permission to appeal require that the issue be addressed at the trial level. Consequently, the trial court erred in declining to consider the issue.

The case is remanded to the trial court for further proceedings.

Costs are taxed to the City of Bristol.

_____
Reid, J.

Concur:

Anderson, C.J., Birch and Holder, JJ.

Drowota, J. - Not participating.