IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 20, 2003 Session

## TOWN OF OAKLAND v. TOWN OF SOMERVILLE, ET AL.

**An Appeal from the Chancery Court for Fayette County**
**No. 12928     L. T. Lafferty, Sr., Special Judge**

_____

**No. W2002-02301-COA-R3-CV - Filed October 7, 2003**

_____

This is an annexation case. The plaintiff municipality passed an ordinance annexing adjoining property. The annexation was to be effective ninety days later. The property to be annexed was also near the defendant municipality, which had a greater population than the plaintiff municipality. After the plaintiff municipality passed the annexation ordinance, prior to its effective date, the defendant passed an ordinance to annex the same property. Almost two years later, the plaintiff filed this lawsuit, seeking a declaratory judgment that the defendant's annexation ordinance was invalid, because it attempted to annex property that the plaintiff had already annexed. The trial court granted the defendants' motion to dismiss, determining that the plaintiff had had ninety days in which to challenge the ordinance in a *quo warranto* action pursuant to Tennessee Code Annotated § 6-51-103, and its failure to do so within that time limit was fatal to its claim. The plaintiff now appeals. We reverse, finding that the remedy of declaratory judgment was available to challenge the validity of an annexation ordinance, and that the ninety-day requirement for a *quo warranto* action does not apply to such a declaratory judgment lawsuit.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is**
**Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Richard J. Myers, Memphis, Tennessee, for the appellant, Town of Oakland.

J. Kevin Walsh and James R. Newsom, III, Memphis, Tennessee, for the appellees, Town of Somerville, et al.

**OPINION**

The Plaintiff/Appellant Town of Oakland ("Oakland") and the Defendant/Appellee Town of Somerville ("Somerville") are both municipalities in Fayette County, Tennessee. Somerville's

population is greater than Oakland's. Both Oakland and Somerville have developed alongside State Highway 64, with Oakland being on Somerville's immediate west side. Warren Road runs perpendicular to Highway 64, roughly equidistant between Oakland and Somerville. In the complaint below, Oakland alleged that it had an agreement with Somerville that Warren Road would be the boundary separating the eastern and western annexation reserve areas for Oakland and Somerville, respectively. Under the alleged agreement, Oakland and Somerville were bound not to annex property in the other town's annexation reserve area.

William Russell Hyneman, d/b/a W. R. H. Enterprises LLC ("Hyneman"), owned property in the annexation reserve area on the west side, or the "Oakland side," of Warren Road. On July 8, 1999, Hyneman petitioned Oakland to annex his property with the intent of establishing a residential subdivision.[1] Oakland and Hyneman entered into an agreement under which Oakland would annex the property, and Hyneman would contribute $1.8 million towards Oakland's construction of a sewer treatment plant to serve Hyneman's proposed subdivision. Accordingly, on September 30, 1999, Oakland passed on final reading Ordinance No. 1-9-99 ("Oakland's ordinance") annexing, among other things, Hyneman's property. The ordinance stated that it would be "effective ninety days from and after its passage," which would fall on December 30, 1999.

On October 11, 1999, after passage of the Oakland ordinance but prior to its effective date, Somerville passed on first reading Ordinance No. 99-18 ("Somerville's ordinance") to annex the same Hyneman property. The next day, October 12, 1999, before the "operative date" of the Oakland ordinance, Somerville sent Oakland a notice informing Oakland that it had begun annexation proceedings for Hyneman's property. In the notice to Oakland, Somerville asserted that, as the larger municipality, Somerville had priority to annex Hyneman's property, as set forth in Tennessee Code Annotated § 6-51-110(b). This statute states:

> (b) If two (2) municipalities which were incorporated in the same county shall initiate annexation proceedings with respect to the same territory, the proceedings of the municipality having the larger population shall have precedence and the smaller municipality's proceedings shall be held in abeyance pending the outcome of the proceedings of such larger municipality.

Tenn. Code Ann. § 6-51-110(b) (1998). As is provided in the statute, Somerville's notice informed Oakland that Oakland was required to hold its annexation proceedings in abeyance pending the outcome of Somerville's annexation proceedings. On October 28, 1999, Somerville adopted Ordinance 99-18 on final reading, annexing Hyneman's property. After Somerville's annexation of Hyneman's property, Hyneman refused to give Oakland the agreed upon $1.8 million to fund construction of the proposed sewage treatment facilities.

---

[1]Hidden Springs, LLC, is an entity like WRH Enterprises that owns property in Fayette County on the "Oakland side" of Warren Road. Along with Hyneman, Hidden Springs also sought to have its property annexed by Oakland and to develop residential subdivisions on its property.

On December 21, 1999, Hyneman filed a *quo warranto* action against Somerville, arguing that Somerville's annexation of his property was unreasonable. On November 30, 2000, the parties settled the matter and Hyneman voluntarily non-suited his lawsuit against Somerville.

On August 6, 2001, Oakland filed a complaint for a declaratory judgment and breach of contract in the trial court below. Oakland named as defendants Somerville, its mayor and aldermen, Hyneman, and Hyneman's business entities. In the lawsuit, Oakland asserted that Somerville's ordinance annexing the Hyneman property was invalid because Somerville had no statutory authority to annex property that had already been annexed by Oakland. The complaint also alleged that Somerville breached its agreement to refrain from annexing property in Oakland's annexation reserve area. Finally, Oakland alleged that Hyneman breached its contract with Oakland to pay $1.8 million for the proposed sewage facilities.

On March 6, 2002, the defendants filed a motion to dismiss pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The motion asserted that Oakland's lawsuit should be dismissed because: (1) Oakland failed to challenge Somerville's ordinance in a timely manner; and (2) since Oakland did not timely file a *quo warranto* suit challenging the annexation, Oakland did not have standing to challenge Somerville's ordinance under the Declaratory Judgment Act.

On September 3, 2002, the trial court granted Somerville's motion to dismiss, reasoning that Oakland's lawsuit was barred because it was filed more than ninety days after the final reading of Somerville's annexation ordinance, that is, beyond the ninety-day deadline for filing a *quo warranto* action. The trial court also determined that declaratory relief was not available to Oakland on the facts of the case.[2] *See* Tenn. Code Ann. § 6-51-103(a)(1)(A). In effect, the trial court held that a *quo warranto* action was the exclusive remedy available to Oakland to challenge Somerville's ordinance. After the dismissal of those claims, Oakland non-suited its remaining claims against Hyneman, rendering the trial court's prior order final and appealable. Oakland now appeals the trial court's order of dismissal.

On appeal, Oakland argues that, because it is challenging the *validity* of the Somerville ordinance, rather than the reasonableness of the annexation, Oakland was authorized to file this action pursuant to the Declaratory Judgment Act. In support, Oakland cites the Tennessee Supreme Court's decision in *State ex rel. Earhart v. City of Bristol*, 970 S.W.2d 948 (Tenn. 1998), arguing that *Earhart* holds that a municipality may file an action under the Declaratory Judgment Act to allege that an annexation ordinance is invalid or exceeds the authority delegated by the legislature. If the action is properly brought under the Declaratory Judgment Act, Oakland argues, then it is not bound by the ninety-day limitation applicable to *quo warranto* actions. In response, Somerville

---

[2]Somerville insists that the trial court also reached the conclusion that Somerville properly exercised its priority pursuant to Tennessee Code Annotated § 6-51-110(b). We disagree. The trial court merely held that, because a *quo warranto* proceeding was available to Oakland during the pertinent time frame, it was the exclusive remedy available to challenge Somerville's ordinance.

argues that ***Earhart*** should be narrowly construed, claiming that its holding applies only in cases in which a *quo warranto* proceeding was unavailable to the plaintiff. Somerville claims that, because Oakland could have brought a *quo warranto* action within ninety days after the final reading, but failed to do so, it is not permitted now to collaterally challenge Somerville's annexation ordinance.

We review the grant of a motion to dismiss under Rule 12.02(6) *de novo*, affording no presumption of correctness to the decision of the trial court. ***Robinson v. Sundquist***, No. M2001-01491-COA-R3-CV, 2003 WL 21169480, at \*1 (Tenn. Ct. App. May 20, 2003). We must assume that the allegations in the complaint are true and determine whether the allegations state a cause of action for which relief may be granted. "A motion to dismiss should only be granted if 'it appears that the plaintiff can establish no facts supporting the claim that would warrant relief.' " ***Id.*** (quoting ***Doe v. Sundquist***, 2 S.W.3d 919, 922 (Tenn.1999)). Issues of statutory interpretation are questions of law subject to *de novo* review. ***Wilkins v. Kellogg Co.***, 48 S.W.3d 148, 151 (Tenn. 2001); ***State ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White Eagle***, 63 S.W.3d 734, 754 (Tenn. Ct. App. 2001). In construing the statutes at issue, in this case, we must give effect to the legislative intent "primarily from the natural and ordinary meaning of the language used . . . ." ***Earhart***, 970 S.W.2d at 951 (quoting ***Worrall v. Kroger Co.***, 545 S.W.2d 736, 738 (Tenn. 1977)). "Statutes relating to the same subject or sharing a common purpose must be construed together (*in pari materia*), 'in order to advance their common purpose or intent.' " ***Frye v. Blue Ridge Neuroscience Ctr., P.C.***, 70 S.W.3d 710, 716 (Tenn. 2002) (quoting ***Carver v. Citizen Utils. Co.***, 954 S.W.2d 34, 35 (Tenn. 1997)); *see **LensCrafters, Inc. v. Sundquist***, 33 S.W.3d 772, 777 (Tenn. 2000). Such statutes should be construed so as to advance the intent of the legislature and arrive at the most harmonious result possible. ***Frye***, 70 S.W.3d at 716.

"The annexation of territory is not a common right of municipalities. . . ." ***City of Watauga v. City of Johnson City***, 589 S.W.2d 901, 904 (Tenn. 1979). Rather, "[i]t is the exclusive prerogative of the Legislature to create municipalities and to alter, shrink or enlarge their boundaries at will." ***Id.*** In the exercise of that prerogative, the legislature has delegated to municipalities the power to annex by ordinance according to the terms and conditions in the annexation statutes, Tennessee Code Annotated § 6-51-101, *et seq.* ***Id.*** Under Tennessee Code Annotated § 6-51-102, a municipality may, by ordinance, "extend its corporate limits by annexation of such territory adjoining its existing boundaries as may be deemed necessary for the welfare of the residents and property owners of the affected territory as well as the municipality as a whole . . . ." Tenn. Code Ann. § 6-51-102(a)(1) (1998). That section also provides "that the ordinance shall not become operative until thirty (30) days after final passage thereof." ***Id.*** In 1998, however, the legislature enacted Tennessee Code Annotated § 6-58-108(b)(4), which appears to amend this time frame to ninety days.[3] Comporting with this time limitation, both the Oakland and the Somerville ordinances state that they would become operative ninety days after their passage on final reading.

---

[3]That statute provides:

> If the county or any other aggrieved owner of property does not contest the annexation ordinance under § 6-51-103 within ninety (90) days of final passage of the annexation ordinance, the ordiance shall become operative ninety (90) days after final passage thereof.

Tenn. Code Ann. § 6-58-108(b)(4) (1998).

-4-

The statutes regarding annexation also afford the owner of property in an annexed area the authority to challenge the reasonableness of the annexation in a *quo warranto*[4] action under Tennessee Code Annotated § 6-51-103. ***Earhart***, 970 S.W.2d at 952. That statute provides in pertinent part:

> (a)(1)(A) Any aggrieved owner of property which borders or lies within territory which is the subject of an annexation ordinance prior to the operative date thereof, may file a suit in the nature of a quo warranto proceeding in accordance with this part, § 6-51-301 and title 29, chapter 35 to contest the validity thereof on the ground that it reasonably may not be deemed necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole and so constitutes an exercise of power not conferred by law. Notwithstanding the provisions of any other section in this chapter, for purposes of this section, an "aggrieved owner of property" does not include any municipality or public corporation created and defined under title 7, chapter 82 which owns property bordering or lying within the territory which is the subject of an annexation ordinance requested by the remaining property owner or owners of the territory and whose property and services are to be allocated and conveyed in accordance with § 6-51-111, § 6-51-112 or § 6-51-301, or any contractual arrangement otherwise providing for such allocation and conveyance.

Tenn. Code Ann. § 6-51-103 (a)(1)(A) (1998). Thus, this statute allows an "aggrieved owner of property" to challenge an annexation ordinance on the ground that it is not reasonably necessary for the safety and welfare of the residents involved. ***See Earhart***, 970 S.W.2d at 952. The Tennessee Supreme Court has delineated factors to consider in determining whether an annexation is reasonable:

> a. the necessity for, or use of, municipal services;
>
> b. the present ability and intent of the municipality to render municipal services when and as needed;
>
> c. whether the annexation is for the sole purpose of increasing municipal revenue without the ability and intent to benefit the annexed area by rendering municipal services.

***City of Kingsport v. State ex rel. Crown Enters., Inc.***, 562 S.W.2d 808, 812 (Tenn. 1978); ***see Saylors v. City of Jackson***, 575 S.W.2d 264, 266 (Tenn.1978). Additional factors include whether the annexation will benefit the citizens of the municipality, and whether failing to annex the territory would inhibit the growth of the annexing municipality. ***See Bowevil Exp., LLC v. City of Henderson***, No. W1999-02137-COA-R3-CV, 2001 WL 204211, at *4 (Tenn. Ct. App. 2001).

---

[4]*Quo warranto*, literally translated, means "by what authority." BLACK'S LAW DICTIONARY 1264 (7th ed. 1999).

Prior to 1974, a municipality had no standing to challenge the annexation ordinance of another municipality, because the statute authorizing such a challenge applied only to an "aggrieved owner of property" who lived in the annexed territory. *City of Gallatin v. City of Hendersonville*, 510 S.W.2d 507, 509 (Tenn. 1974). In 1974, in response to the decision in *Gallatin*, the General Assembly enacted section 6-51-110(f), which states:

> (f) When a larger municipality initiates annexation proceedings for a territory which could be subject to annexation by a smaller municipality, the smaller municipality shall have standing to challenge the proceedings in the chancery court of the county where the territory proposed to be annexed is located.

Tenn. Code Ann. § 6-51-110(f) (1998). Thus, since that statute was enacted, a smaller municipality has "the same standing to challenge annexation that [has] theretofore [been] granted to owners of property in the territory to be annexed, no more no less." *City of Watauga*, 589 S.W.2d at 906.

We now turn to Oakland's argument that it can challenge the validity of Somerville's annexation ordinance pursuant to the Declaratory Judgment Act. In essence, the issue turns on an interpretation of the Court's holding in *Earhart*. In that case, the city of Bristol passed an annexation ordinance in 1989 that purported to annex the right-of-way of Highway 11E. *Id.* at 949. Six years later, in 1995, the city adopted twenty-four (24) annexation ordinances, annexing twenty-four separate parcels of property adjacent to the portion of Highway 11E included in the 1989 annexation ordinance. *Id.* at 950. Within thirty (30) days, the owners of fifteen of the twenty-four parcels filed a *quo warranto* and declaratory judgment action contesting the annexations. The property owners alleged that the 1995 ordinances were invalid because the 1989 highway right-of-way annexation, on which the 1995 annexations were based, was "null and void." They asserted that the underlying 1989 annexation was void because it did not annex people, private property, or commercial activities as required under Tennessee Code Annotated § 6-51-102. *Id.* The jury found that all of the 1995 ordinances were reasonable, and the trial court entered a judgment on the verdict. In addition, the trial court found that the plaintiffs were not entitled to declaratory relief regarding the validity of the 1989 ordinance. The intermediate appellate court affirmed. The Supreme Court of Tennessee granted certiorari to address, *inter alia*, whether the plaintiffs could collaterally challenge the 1989 ordinance outside of the statutory *quo warranto* procedures. *Id.*

In *Earhart*, the Court first observed that *quo warranto* proceedings were the appropriate vehicle to contest an annexation on the grounds that the annexation is not reasonably necessary to the safety and welfare of the inhabitants and property involved. *Id.* at 952. The Court then stated:

> But, where the *quo warranto* proceeding is not available, alternative equitable remedies are not barred. [W]here the remedy by *quo warranto* is available, it is usually held that here is no concurrent remedy in equity, unless by virtue of statutory provision. But if *quo warranto* is not an adequate remedy, it will not be a bar to alternative remedies." The availability of other remedies is specifically acknowledged in section 6-51-113 (1992), which provides, "Except as specifically provided in this part, the powers conferred by this part shall be in addition and supplemental to, and the limitations imposed by this part shall not affect the powers conferred by any other general, special or local law." The Tennessee Declaratory

Judgement Act is just such another general law conferring the power to challenge the validity and construction of statutes and municipal ordinances.

*Id.* at 952-53 (citations omitted). Thus, the *Earhart* Court noted that section 6-51-113 refers to the availability of remedies other than a *quo warranto* proceeding, providing that the *quo warranto* remedy does not "affect the powers conferred by any other general . . . law." *Id.* at 952. It then determined that the Tennessee Declaratory Judgment Act constitutes "any other general law" that confers power to challenge the validity of an annexation ordinance. *Id.* at 952-53. The Court stated that, although objections to the *reasonableness* of an ordinance can be raised in a *quo warranto* action, the *validity* of an ordinance is subject to challenge under the Declaratory Judgment Act. *Id.* at 954. The Court found that, while a *quo warranto* proceeding must be brought within thirty days (now ninety days), that time limitation does not apply to a declaratory judgment action contesting the validity of an annexation ordinance. *Id.* It stated plainly that "[t]he validity of an annexation ordinance alleged to exceed the authority delegated by the legislature is subject to challenge under the Declaratory Judgment Act." *Id.* at 954.

This Court subsequently applied *Earhart*, emphasizing that, "[w]hile *quo warranto* is the exclusive means by which a party may challenge the *reasonableness* of an annexation, the Supreme Court has held that '[t]he *validity* of an annexation ordinance alleged to exceed the authority delegated by the legislature is subject to challenge under the Declaratory Judgment Act.'" *Jefferson County v. City of Morristown*, No. 03A01-9810-CH-00331, 1999 WL 817519, at *7 (Tenn. Ct. App. Oct. 13, 1999) (quoting *Earhart*, 970 S.W.2d at 954 (emphasis added)).[5] Thus, *Earhart* applies in cases in which it is alleged that the annexing municipality has exceeded its authority in passing the annexation ordinance.

Somerville argues that *Earhart* holds that using the Declaratory Judgment Act to challenge the validity of an annexation ordinance is permissible only when *quo warranto* is completely unavailable to the plaintiff. In support, Somerville cites this language from *Earhart*: "[W]here the remedy by *quo warranto* is available, it is usually held that there is not concurrent remedy in equity, unless by virtue of statutory provision. But if *quo warranto* is not an adequate remedy, it will not be a bar to alternative remedies." *Earhart*, 970 S.W.2d at 952 (quoting 65 Am. Jur. 2d *Quo Warranto* § 7 (1972)). Somerville in effect urges this court to adopt the negative inference from this language, i.e., where the remedy by *quo warranto* <u>is</u> available, then there <u>is no</u> concurrent remedy. The *Earhart* Court, however, spoke only of there being no concurrent remedy *in equity*, and specifically excepted remedies pursuant to a statute such as the Declaratory Judgment Act. Indeed, *Earhart* found statutory authority for an action under the Declaratory Judgment Act "by virtue of statutory provision," and did not rely on the fact that *quo warranto* relief was not available to the plaintiffs.

---

[5]Somerville attempts to distinguish *Jefferson County* from the instant case based on the fact that the court in that case addressed the issue of which annexation law to apply when the legislature had amended the annexation statutes and the effective date of the amended statute was after the final reading of the challenged ordinance. While the facts in *Jefferson County* and those in the instant case are not identical, that does not explain why the *Jefferson County* court's broad interpretation of *Earhart* should not apply in this case.

Moreover, in this case, although *quo warranto* would have been available to Oakland if it desired to contest the reasonableness of Somerville's annexation ordinance, that is not what Oakland sought to do. Oakland alleges that the Somerville ordinance is void because it was enacted after Oakland's annexation ordinance on the same property had been passed on final reading, albeit before the effective date of the Oakland ordinance. Oakland also alleges that Somerville breached its agreement with Oakland regarding annexation of properties in Oakland's "annexation reserve" area. Thus, Oakland clearly sought to contest the validity of the annexation, not its reasonableness, an action which *Earhart* clearly holds is permissible under the Declaratory Judgment Act and not subject to the time restrictions applicable to *quo warranto* proceedings.

Somerville argues that *City of Bristol v. Town of Bluff City*, 868 S.W.2d 282 (Tenn. Ct. App. 1993), which involved the same 1989 annexation of Highway 11E at issue in *Earhart*, supports its position. In that case, Bluff City, which is smaller in population than Bristol, sought to annex the same property as that annexed by Bristol in 1989. *See City of Bristol*, 868 S.W.2d at 282. Bristol filed an action to negate Bluff City's attempt to annex the area based on its priority as the larger municipality. Bluff City filed a counter-claim for declaratory relief, alleging that Bristol's previous 1989 annexation was invalid. *Id.* The trial court held that the Bristol's annexation was illegal and void. The appellate court reversed, finding that Bluff City could not challenge the validity of the annexation because it did not file a *quo warranto* action within the time limit provided by statute. The appellate court held that a *quo warranto* action would include a challenge to the validity of an annexation. The court stated that "[a] *Quo Warranto* proceeding reaches governmental exercise of authority unlawfully asserted . . . ." *Id.* at 283. That holding is consistent with Somerville's position that a *quo warranto* proceeding is the exclusive avenue for challenging an annexation ordinance, even if the challenge relates to unlawfully asserted authority. *City of Bristol*, however, was decided prior to *Earhart* and is at odds with *Earhart's* later holding that the *quo warranto* time limitation "does not apply to suits contesting the validity of an ordinance which purports to annex an area that . . . [is] void." *Earhart*, 970 S.W.2d at 954. Under these circumstances, we decline to adopt the reasoning in *City of Bristol*.

Accordingly, we conclude that Oakland was authorized to maintain this declaratory judgment action challenging the validity of the Somerville annexation ordinance, and consequently reverse the trial court's grant of Somerville's motion to dismiss. Our decision pretermits other issues raised on this appeal.[6]

The decision of the trial court is reversed, and this cause is remanded for further proceedings not inconsistent with this Opinion. Costs are to be taxed to the appellees, Town of Somerville, et al., for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[6]Somerville argues that *City of Gallatin v. City of Hendersonville*, 510 S.W.2d 507 (Tenn. 1974), supports its argument that it properly exercised its statutory priority in initiating annexation proceedings on the Hyneman property after Oakland's final reading. We do not address in this Opinion that issue or any other relating to the substance of Oakland's petition. Rather, we leave those issues for the trial court to determine in the first instance on remand.