# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 17, 2011 Session

## STATE OF TENNESSEE ex rel. BETTYE GROOMS, ET AL. v. THE CITY OF NEWPORT, TENNESSEE

**Appeal from the Chancery Court for Cocke County**
**No. 08115      Telford E. Forgety, Jr., Chancellor**

---

**No. E2011-00105-COA-R3-CV-FILED-OCTOBER 17, 2011**

---

The City of Newport ("Newport") sought to annex certain properties in Cocke County. A number of affected parties ("the Plaintiffs") objected to the annexation and filed a complaint against Newport in the Chancery Court for Cocke County ("the Trial Court"). The Trial Court held that the Plaintiffs had failed to carry their burden of proving that the annexation was unreasonable or that the health, safety and welfare of the relevant citizens would not be materially retarded without the annexation. The Plaintiffs then sought to amend their complaint to allege that Newport was barred from annexation because of Newport's allegedly having defaulted on a prior plan of services from an earlier annexation. The Trial Court denied the Plaintiffs' motion to amend on the basis, in part, that the issue was not timely raised, pled, or tried. The Plaintiffs appeal. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, J.J., joined.

David L. Buuck, Knoxville, Tennessee, for the appellants, Bettye Grooms, Edna Bush, John Clark, Clayton Owenby, Charles Edmonds, Donnie Miller, Kathy Miller, A. R. Kyker, Tennessee Tobacco Sales, Inc., Kevin Wilder, Jimmy Miller, Jimmy Fox, Nora Freshour, Arlie C. Mason, Patty Jenkins, and Elizabeth Dewey Strange.

Charlton R. Devault, Jr., Kingsport, Tennessee, and Terry Hurst, Newport, Tennessee, for the appellee, the City of Newport, Tennessee.

# OPINION

## Background

In 2008, Newport adopted Ordinance No. 2008-5, annexing certain territory designated as Annexation Area #1 ("Area One") near Highway 25W/70. Area One contains 25 distinct tracts. As required, Newport also adopted a Plan of Services for Area One. The Plan of Services provided for, among other things, police protection, fire protection, street maintenance and repair, and inspections and code enforcement. These provisions all stated that no additional personnel or equipment were planned to meet these service needs of the annexation, except for fire hydrants which were to be installed within three years of the effective date of the annexation.

Plaintiffs, bringing this action *quo warranto*, filed a complaint opposing the annexation in August 2008. Plaintiffs essentially argued that the annexation was unnecessary and thus unauthorized by applicable law. Newport filed an answer in opposition to the Plaintiffs' complaint, averring that it had statutory authority to enact the relevant annexation ordinance. This case was tried in July 2010. Numerous witnesses testified. Cognizant of all the evidence presented, we will focus on and summarize only certain key testimony.

Among the witnesses to testify was Dennis Edmonds ("Edmonds"), operator of a business in Area One, who expressed his opposition to the annexation. Edmonds testified that his property tax would rise by 89.5 percent under the annexation. Edmonds also testified that there was nothing in Newport's plan of services for Area One that his business did not already have. Edmonds testified that he received his electrical service and water from Newport Utility Board. Edmonds also stated that he had concerns about Newport re-zoning his area such that commercial use of his property would no longer be allowed.

The gist of the testimony from witnesses opposing the annexation was that the annexation was unnecessary and their taxes would increase. Dr. Shannon Grooms ("Grooms"), a Principal with the Cocke County School Board whose mother owns a business in Area One, also testified to his concern about the impact of imposing Uniform Building and Fire Codes Enforcement on existing businesses. Grooms expressed skepticism that annexation would improve this area. Grooms stated in his testimony:

> Q. Okay. Well, maybe I misunderstood you then. Is it your testimony that before Annexation takes place you need all this development to spring up, is that what you're telling me?
>
> A. No, I don't care if we never have a development out there. I'm just

saying I don't want to pay your taxes based on something you're accusing that will develop when it's not there. And it's a gamble to say that it's going to be there. You can't tell, or can you tell me if I pay more taxes and if we take on more restrictions that, can you tell me that you will guarantee me that in five years we'll have growth. And the fact that my mother can generate enough business, bottom line, to pay that extra tax taxes [sic]?

The Mayor of Newport, Mayor Connie Ball ("Ball"), testified to the benefits from Newport that Area One receives already. Among the services Area One receives from Newport is city police cruisers patrolling the highway through Area One. Ball also stated that Newport keeps the highway clean and lit for travelers. Ball stated that with annexation, Area One would receive city garbage collection, though not for bulk containers.

Ron Fugatt, General Manager of Newport Utilities, testified that county residents pay a higher minimum cost for water than city residents for residential purposes. Fugatt testified regarding sewage:

Q. Okay. Now, there are numerous businesses and houses that are still on septic out there, is that correct?

A. Well, in this particular, in this particular, you know, section, there appears to be nine that must have their own septic system.

Q. Now, if we could go on with regard to what the plans are out there. Was Newport Utilities Board asked by the City of Newport to look at putting in lines if this area were annexed?

A. Yes, sir. I think one of the things, I've listened to the testimony, the Annexation Plan, of course, was done several years ago, and there was an estimate done, it was an estimate. Recently in light of updating that estimate and actually doing a little bit more detail design we have come up with some more definitive answers on the design, as well as the cost associated with that design.

Twelve parcels in Area One were on sewer at the time of trial.

Randy Ragan ("Ragan"), Fire Chief for Newport, testified about the capacities of the Newport Fire Department. Newport has two fire stations. The county fire department, while based in Area One, services all of Cocke County. Ragan testified that while the city

-3-

fire department had a mutual aid agreement with the county fire department, the agreement "doesn't mean that you have to go, there's no duty past my jurisdiction, which is the City of Newport." Ragan acknowledged that whether annexation occurred or not, his department would continue to provide good services to citizens so long as the budget was kept up. Regarding confusion as to jurisdiction in emergency calls, Ragan stated:

Q.   Alright. So there's really not a lot of confusion there, because you've already got, if there's a wreck, the 911 Dispatcher is going to send it to you, if there's a wreck on Highway 25/70, right?

A.   The only time there's a concern is, is it a City property or is it not a City property. We know that, like we talked about Falcon a little bit, we know Falcon is not in the City.

Q.   Well, you refused to fight a fire at Falcon?

A.   No, I haven't yet.

Q.   Alright. Well, because your main thing is to protect property and lives and worry about the jurisdictional issues later on, right? Isn't that what you do as a fireman?

A.   Our job is to protect life and property, but yes, I have to worry about jurisdictional the minute I get the call. That's why when we had the last call when we got called on, on 25-E, in the County, we had to call people from off duty and send the reserve truck to fight that fire, because it was outside the City Limits.

Walter Cole ("Cole") of the Newport Housing Authority testified. Cole compiled the information for the Annexation Study at the request of the previous City Council. Cole stated that the annexation of Area One was reasonable: "Well, you had, for a couple of reasons, one of them was the confusion with emergency services, which you've already heard today. Also, the protection of property values, dealing with Zoning and Codes, having continuous outline there." Cole indicated that Area One currently enjoys certain services from Newport in the form of street lighting and emergency calls.

Cole testified that the County lacks zoning and building codes. Cole stated that zoning, land use regulation and building codes would promote harmonious land use. Zoning and building codes would come about through annexation of Area One.

James Finchum ("Finchum"), Deputy Police Chief for Newport, testified. Finchum testified that Highway 25W/70 was patrolled by the city police at least once per hour. Finchum testified that confusion surrounding departmental jurisdiction in the context of answering calls was "a constant problem for us."

Assistant Superintendent of Streets David Hill testified that Newport cleans the Highway 25/70 corridor through Area One. In winter, Newport conducts snow removal along Highway 25/70 near Area One properties. Hill testified that people from Area One currently use the city's Recycle center. Under annexation, the garbage would be collected by the city.

Steve Thompson ("Thompson"), Superintendent of Newport City School System, testified regarding the Newport Grammar School. Thompson described a number of benefits of the Newport Grammar School, including a Special Enrichment Program whereby Newport gave the school $9,000 in extra money that year. Thompson stated that while students from the county whose parents are not residents of Newport may attend Newport Grammar School, they, unlike children from within Newport, have to pay tuition. Thompson stated that Newport does not provide transportation for students. Thompson also acknowledged that both city and county schools adhered to the Tennessee curriculum.

Glenn Rosenoff ("Rosenoff"), Regional Director of the Upper East Tennessee Region for the State of Tennessee, Department of Economic and Community Development, Local Planning Assistance Office, testified. Rosenoff was qualified as an expert in planning. Rosenoff testified that the plan of services for Area One was reasonable with respect to, among other things, fire protection, supply of water, and street lighting. Rosenoff stated that, given Newport's size of a little over four square miles as opposed to Cocke County's 430 square miles, Newport has an advantage in terms of providing services as Newport constitutes a "a smaller more compact geographical area." Rosenoff added that it was his opinion that both Newport and Area One would benefit from the annexation. Rosenoff testified to the benefit afforded by zoning under annexation:

> The intent is to provide harmonious development, the intent is to have land use management that is compatible to one another, or if there's incompatible, then Zoning would have such things as Site Plan Review. In Site Plan Review you have the possible provisions of having landscape buffers or fencing, buffers that would separate lands that are not compatible.

Rosenoff stated that he was aware of certain confusion in the delivery of emergency services. Rosenoff later acknowledged that under any circumstances, he would advise the fire department to coordinate regarding jurisdictional issues.

Roger Greene ("Greene") testified last. Greene was called by the Plaintiffs as a "rebuttal witness." Greene stated that his residence was annexed into Newport around 1985. Greene testified that he lacks sewer or garbage pick-up. Earlier, Town Planner Mark Robinson had testified on cross-examination by the Plaintiffs' counsel that sewer service was under the plan of services for Greene's annexation. Robinson stated that sewer was available to Greene but as to having it run up to him, "[t]hat's between him and the Newport Utilities." Greene's testimony formed the basis for an argument first raised in closing arguments by the Plaintiffs asserting that, because Newport allegedly defaulted on a plan of services in a prior annexation, the present annexation is barred.

At the end of the two day trial, the Trial Court ruled in favor of Newport. The Trial Court stated, *inter alia*:

> In short, for all these reasons, the Court simply, as I've already said, I cannot hold that the plaintiffs have carried the burden of proof here to establish that this, under 658-111, that this Annexation is unreasonable for the overall well being of the communities involved.
> Or that the health, safety and welfare of the citizens and property owners of the municipality and territory will not be materially retarded in the absence of such Annexation.

The Plaintiffs timely filed their Motion to Amend Pleadings to Conform to Evidence. Therein, the Plaintiffs requested that they be allowed to amend their complaint to allege that the present annexation is barred under Tenn. Code Ann. § 6-51-102(b)(5) based on Newport's alleged default on an earlier plan of services. At a hearing in November 2010, the Trial Court denied the Plaintiffs' motion. The Trial Court ruled that the issue was not pled. The Trial Court also questioned whether the applicable law was retrospective and noted that the default had not been established through any formal mechanism.

In December 2010, a comprehensive order with transcripts attached, reflecting the outcomes of both the July 2010 trial and November 2010 hearing, was entered. The Plaintiffs appeal.

#### Discussion

We restate the issues raised on appeal as follows: 1) whether the Trial Court erred in declining to hold that Newport's alleged default on a prior plan of services bars the annexation in the instant appeal; and 2) whether the Trial Court erred in holding that the annexation was lawful.

-6-

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in declining to hold that Newport's alleged default on a prior plan of services bars the annexation at issue in this case now on appeal. Following the Trial Court's ruling in favor of Newport on the annexation, the Plaintiffs moved to amend the pleading pursuant to Rule 15.02 of the Tennessee Rules of Civil Procedure to include the default issue. In their complaint, the Plaintiffs did cite to "T.C.A. 6-51-102", but failed either to make any factual allegations concerning any alleged earlier default or cite to the specific sub-section concerning the consequences of default by Newport under a plan of services. On appeal, Plaintiffs argue that the issue was tried by express or implied consent.

As Newport never expressly consented to trial of the default issue, we must determine whether the issue was tried by implied consent. Whether the issue of a default of a prior plan of services bars the instant annexation was tried by implied consent hinges on the issues that actually were litigated, and the failure to amend or to request an amendment is not dispositive. *McLemore v. Powell*, 968 S.W.2d 799, 803 (Tenn. Ct. App. 1997). This Court in *McLemore* explained:

> Generally speaking, trial by implied consent will be found when the party opposed to the amendment knew or reasonably should have known of the evidence relating to the new issue, did not object to this evidence, and was not prejudiced thereby. *Id.* As the Tennessee Supreme Court stated in *Zack Cheek Builders, Inc. v. McLeod*:
>
>> "Implied consent . . . is much more difficult to establish (than express consent) and seems to depend on whether the parties recognized that an issue not presented by the pleadings entered the case at trial. A party who knowingly acquiesces in the introduction of evidence relating to issues that are beyond the pleadings is in no position to contest a motion to conform. Thus, consent generally is found when evidence is introduced without objection, or when the party opposing the motion to amend himself produced evidence bearing on the new issue."

*Id.* (quoting 6 Wright & Miller, *Federal Practice and Procedure* § 1493, at 462–63 (1971)). Trial by implied consent is not shown by the presentation of evidence that is relevant to an unestablished issue when that evidence is also relevant to the established issue. *Hiller v. Hailey,* 915 S.W.2d 800, 805 (Tenn. App. 1995) (citations omitted).

*McLemore v. Powell*, 968 S.W.2d 799, 803 (Tenn. Ct. App. 1997). The Trial Court's determination with respect to the issue of implied consent "must be upheld unless there has been an abuse of discretion." *Hobbs v. Hobbs*, 987 S.W.2d 844, 847 (Tenn. Ct. App. 1998).

In the instant case, the Trial Court found that the default issue "came way too late" and "was not pled." We agree. The Plaintiffs did not name Greene as a witness prior to the trial. Greene, not a named party in this case, testified at the very end of the July 2010 trial about an issue that had not been properly raised. We also note that Greene was called by the Plaintiffs as a "rebuttal" witness apparently to rebut testimony elicited not by Newport's counsel but instead by the Plaintiffs' counsel on cross-examination. Newport was given neither adequate time nor notice to contest this late raised issue. The Plaintiffs correctly state that Newport did not object to Greene's testimony, but do we not consider this fact dispositive. It is apparent from the record as a whole that Newport, understandably so, was unaware that Greene's testimony was in support of any default issue, or, indeed, that any alleged default under a prior plan of services was even an issue.

The Plaintiffs' post-trial motion to amend pleadings to conform was insufficient to salvage the default issue. The Trial Court properly denied the motion. The default issue was neither pled nor properly litigated, Greene's eleventh hour "rebuttal" testimony notwithstanding. We hold that there was no trial of the default issue by either express or implied consent. We affirm the judgment of the Trial Court as to this issue.

We next address whether the Trial Court erred in holding that the annexation was lawful. According to Tenn. Code Ann. § 6-58-111(a):

(a) A municipality possesses exclusive authority to annex territory located within its approved urban growth boundaries; therefore, no municipality may annex by ordinance or by referendum any territory located within another municipality's approved urban growth boundaries. Within a municipality's approved urban growth boundaries, a municipality may use any of the methods in chapter 51 of this title to annex territory; provided, that if a quo warranto action is filed to challenge the annexation, the party filing the action has the burden of proving that:

-8-

(1) An annexation ordinance is unreasonable for the overall well-being of the communities involved; or

(2) The health, safety, and welfare of the citizens and property owners of the municipality and territory will not be materially retarded in the absence of such annexation.

Tenn. Code Ann. § 6-58-111(a) (2011).[1]

The Plaintiffs do not contest on appeal that Area One falls within Newport's urban growth boundary. The Plaintiffs do, however, argue that the health, safety and welfare "of the citizens and property owners of [Newport] and [Area One]. . ." would not be impaired if Area One were not annexed. Tenn. Code Ann. § 6-58-111(a)(2) (2011). Both parties cite to *State ex rel. Tipton v. City of Knoxville*, 205 S.W.3d 456 (Tenn. Ct. App. 2006), an Opinion addressing an annexation and containing analysis relevant to the instant appeal. *Tipton* articulates the applicable standard for this issue: "[U]nder § 6–58–111(a)(2), Plaintiffs were required to prove that annexation would not materially benefit the health, safety, and welfare of the citizens and property owners of the City and the affected territory." *Id.* at 462. *Tipton* conducted its analysis relative to three aspects: (1) whether the territory currently, materially benefits from services provided by the city; (2) whether the territory would materially benefit from additional city services after the annexation; and (3) whether the city would materially benefit from annexation. *Id.* at 465. We will address these considerations as well. The Plaintiffs in the appeal now before us, as challengers of the annexation, have the burden of proof on this issue.

The evidence shows that Area One already enjoys certain benefits from Newport. Newport police patrol the highway corridor through Area One. The testimony shows that Newport cleans and performs snow removal for the highway corridor through Area One. Newport also makes its Recycle Center available to Area One residents. Newport provides water and electricity to various Area One citizens. In short, it is clear that Area One, while not receiving the full benefits from Newport as it will under annexation, already receives a measure of benefits from Newport.

The Plaintiffs' argument notwithstanding, we find that the evidence does not preponderate against the Trial Court's finding that annexation will materially benefit people and businesses in Area One. Area One stands to gain from more efficient, concentrated police and fire service. While the testimony was not entirely clear as to the level of

---

[1]While the statute was amended in 2010, the relevant provisions remain unchanged from the prior version.

confusion caused by officials sometimes not knowing whether emergency calls came from within the correct jurisdictional zone, we find, as did the Trial Court, that Area One would materially benefit from police and fire services that officially focus on a much smaller domain of territory than all of Cocke County. In any event, based on the evidence, we believe that annexation will reduce the likelihood of serious jurisdictional confusion in emergency situations. Additionally, Area One children will have tuition-free access to Newport Grammar School, not an insignificant benefit. We also acknowledge that the Plan of Services provides for city services in the area of sanitation, lighting, and water. Water, in fact, will be cheaper within Area One under the annexation as county residents now pay more for that service than do city residents.

Newport likewise stands to benefit from annexation of Area One. A review of the maps in this case reveals a sprawling city with incorporated areas stretching out in a number of somewhat contorted ways. Annexation of Area One, as shown by the evidence and as reflected by geography, brings greater uniformity to a somewhat haphazard city boundary. Also, we regard helping to rectify the serious jurisdictional problems facing the emergency services as a significant benefit for Newport as well as to Area One.

The Plaintiffs further argue that the annexation of Area One was motivated purely by designs for additional revenue and thus was unreasonable. We have reviewed the evidence and respectfully find that this argument is without merit. Alderman Goddard testified that the only benefit of annexation was additional revenue at no cost. On the other hand, Alderman Thornton testified that "[r]evenue was never discussed as anything for this area." Thornton also stated that a purpose for annexation was to bring greater uniformity in codes and service to Area One. Mayor Ball testified that the need for growth was a motivation for the annexation. While Ball did later testify that increasing the tax base was essential for the welfare of Newport, it is inaccurate to state that the evidence reflects that the *sole purpose* of the annexation was to increase revenue.

Some of the Plaintiffs' evidence consisted of testimony in opposition to annexation on the basis of having to pay higher city taxes. Others alleged that annexation was unnecessary. Nevertheless, we are constrained by Tennessee law to objectively evaluate the material benefits and reasonableness of the annexation rather than decide this case based upon the Plaintiffs' dissatisfaction with annexation.

The preponderance of the evidence supports the Trial Court's findings and ultimate conclusion that the Plaintiffs failed to meet their burden under Tenn. Code Ann. § 6-58-111(a) (2011). There is sufficient evidence in the record to demonstrate that failure to annex will materially retard the health, safety and welfare of the relevant parties in Area One and in Newport. We reiterate that the evidence preponderates against a finding that the

-10-

annexation in this case is based solely upon an intent to raise more revenue. We affirm the judgment of the Trial Court in all respects.

## Conclusion

The judgment of the Trial Court is affirmed. This cause is remanded to the Trial Court for collection of costs below. Costs on appeal are taxed to the appellants, Bettye Grooms, Edna Bush, John Clark, Clayton Owenby, Charles Edmonds, Donnie Miller, Kathy Miller, A. R. Kyker, Tennessee Tobacco Sales, Inc., Kevin Wilder, Jimmy Miller, Jimmy Fox, Nora Freshour, Arlie C. Mason, Patty Jenkins, and Elizabeth Dewey Strange, and their sureties, if any, for which execution may issue if necessary.

_____
D. MICHAEL SWINEY, JUDGE