IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 23, 2013 Session

## STATE OF TENNESSEE EX REL. PAUL ALLEN, ET AL. v. THE CITY OF NEWPORT, TENNESSEE

**Appeal from the Chancery Court for Cocke County**
**No. 08116      Telford Forgety, Chancellor**

---

**No. E2012-00814-COA-R3-CV - Filed June 18, 2013**

---

The City of Newport sought to annex certain properties in Cocke County, Tennessee. A number of affected parties objected to the annexation and filed a complaint against the City. The trial court allowed the plaintiffs to amend their complaint to allege that the City was barred from annexing their properties because it had defaulted on a prior plan of services from an earlier annexation. The City filed a motion to dismiss. The trial court granted the City's motion on the ground that the statutory amendments on which the plaintiffs relied to support their claim could not be retroactively applied. The plaintiffs appeal. We reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

David S. Wigler and Adam S. Moncier, Knoxville, Tennessee, for the appellants, State of Tennessee ex rel. Paul Allen, Jeff Evans, Hawley Transport Services, Jack Briggs, Steve Smith, Estella Gray & Ann Kyker, Kaye Ramsey, Evelyn Smith, Craig Chrisman, Tennessee Tobacco Sales, Inc., and Betty Bewley.

Charlton R. DeVault, Jr., Kingsport, Tennessee, for the appellee, City of Newport, Tennessee.

### OPINION

### I. BACKGROUND

The appellants, Paul Allen, Jeff Evans, Hawley Transport Services, Jack Briggs, Steve Smith, Estella Gray & Ann Kyker, Kaye Ramsey, Evelyn Smith, Craig Chrisman, Tennessee Tobacco Sales, Inc., and Betty Bewley ("the appellants"),[1] own real property in Cocke County, Tennessee, in the City of Newport's Annexation Area #2 as described in Ordinance No. 2008-6. The ordinance at issue is the second of four 2008 annexation ordinances of private properties immediately adjacent to the previously incorporated right-of-way of U.S. Highway 25W/70, which runs westward from the main corporate limits of the City of Newport ("the City"). Other private properties that have been annexed by request during the past decade also adjoin the highway and some of the Area #2 properties.

This action originally was brought by the appellants under quo warranto statutes, Tennessee Code Annotated sections 6-51-103 and 6-58-111, et seq., contesting the annexation of property without their consent and approval pursuant to Tennessee Code Annotated sections 6-51-102 and -103, along with 6-58-111. The validity of the City's Ordinance No. 2008-5, which annexed properties adjoining the highway corridor in Annexation Area #1 closest to the City's main corporate limits, was confirmed by the trial court in 2010 and affirmed by this court in *State ex rel Grooms v. City of Newport*, No. E2011-00105-COA-R3-CV, 2011 WL 4910366, (Tenn. Ct. App. Oct. 17, 2011). During the *Grooms* trial, counsel for the appellants learned that the City allegedly had defaulted on a prior plan of service from an earlier annexation. The trial court in *Grooms* denied a motion to amend to add this claim, holding that the issue was not timely raised, pled, or tried. We affirmed the trial court's judgment on appeal, describing the facts as follows:

> Roger Greene ("Greene") testified last. Greene was called by the Plaintiffs as a "rebuttal witness." Greene stated that his residence was annexed into Newport around 1985. Greene testified that he lacks sewer or garbage pick-up. Earlier, Town Planner Mark Robinson had testified on cross-examination by the Plaintiffs' counsel that sewer service was under the plan of services for Greene's annexation. Robinson stated that sewer was available to Greene but as to having it run up to him, "[t]hat's between him and the Newport Utilities." Greene's testimony formed the basis for an argument first raised in closing arguments by the Plaintiffs asserting that, because Newport allegedly defaulted on a plan of services in a prior annexation, the present annexation is barred.

*State ex rel. Grooms*, 2011 WL 4910366, at *4.

---

[1] Some plaintiffs named in the original style of the case have not appealed. Burley Builders, Inc., William Gilbert, Bobbie Pierce, Charla Shipley, Luke and Melissa Goddard, and Jackye and Eugene Large, entered notices of voluntary dismissal in the trial court.

In the present action, the appellants timely moved to add a new claim for declaratory judgment asserting that the ordinance approving the annexation was void pursuant to Tennessee Code Annotated section 6-51-102(b)(5) because the City was in default of a prior plan of services. The motion to amend contained the following claims:

6. The City of Newport has failed to provide the services set out in a prior plan of services as set out in one or more previous annexations and is hereby prohibited from annexing the territory at issue in this cause pursuant to T.C.A. § 6-51-102(b)(5).

7. The City of Newport has failed to provide the services set out in the plan of services set out in one or more previous annexations and that such failure makes the annexation of the territory herein, unreasonable.

8. That the City of Newport is further in default on one or more plans of service in that it has failed to comply with the requirements of T.C.A. § 6-52-108 in that it has not, annually, prepared and published in a newspaper of general circulation, a report of the progress made in the preceding year toward extension of services according to such plan or plans, and any changes proposed therein. Nor has the Defendant City of Newport published notice of a public hearing on such progress reports and changes, and held such hearings thereon.

The motion for leave to amend was granted. The trial court continued this case while the Area #1 appeal proceeded.

Upon the completion of the appeal, the City filed a Rule 12.02 motion to dismiss, or for summary judgment on, the amended declaratory judgment claims in the Area #2 case. The City's statement of undisputed material facts in support of its motion for partial summary judgment stated as follows:

1. No Newport property owner has sued the City of Newport for any alleged failure to furnish the municipal services described in an annexation plan of service[s].

2. No Newport property owner has filed any lawsuit against the City pursuant to the provisions of T.C.A. § 6-51-108(d) and demanded that the Court order the City to provide any municipal service described in any annexation plan of service[s] since that code provision was enacted in 1998.

3.  There has been no Court order finding or declaring that the City of Newport is in "default" on any adopted annexation plan of services and is therefore prohibited from engaging in future annexations.

4.  No Newport property owner has filed a suit requesting a writ of mandamus to compel the City of Newport to publish a progress report or hold a public hearing on the status of the extension of municipal services to annexed properties under previously adopted plans of service[s] as authorized by the provisions of T.C.A. § 6-51-108(b).

5.  On November 8, 2005, the City Council of Newport held a public hearing upon a status report on the City's progress in implementing eleven plans of service[s] for annexations which had taken place between 1997 and 2005.

6.  Notice of the City Council's November 8, 2005 regular meeting and public hearing on the City's plans of service[s] status report was published in the Newport Plain Talk, which is the local newspaper of general circulation in the city and county, on October 20, 2005.

7.  The City's annexation November 8, 2005 progress report states in the last paragraph that all of the City's annexation plans of service[s] had been completed and no further annual status reports [were] necessary.

8.  During the July 13, 2010 trial of the annexation case for Area #1 properties . . . Mr. Roger Green[e] testified that the City of Newport had never furnished sanitary sewer service to his property on Amanda Circle which had been annexed in 1984.  No plan of service[s] for the Green[e] property was introduced during the trial by the Area #1 plaintiffs.

9.  The August 12, 1984 Plan of Service[s] for the Amanda Circle/Hedrick property which includes Roger Green[e]'s property does not represent that the City would extend sanitary sewer service to Mr. Green[e]'s property without charging Mr. Green[e] for the cost of the extension.  The 1984 Plan of Service[s] states:

> Sewer service will be provided at inside city rates to any area currently receiving sewer service from the Newport Utilities Board on the effective date of annexation.  Future extensions of the system will be made in accordance with existing city policy.

-4-

The affidavit of Mark Robinson, the Planner and Codes Administrator for the City, revealed that Greene twice requested estimates of the cost to extend sewer service to his property. At the January 11, 2012 hearing, the City abandoned its summary judgment motion "[b]ecause of factual conflicts apparent from the opposing summary judgment affidavits filed by the parties over the 1985 plan of services declaratory judgment issues which involve the Greene property."

According to the City, an alleged services "deprived" property owner such as Greene would first have to obtain a Tennessee Code Annotated section 6-51-108(d) judgment that the City is actually in "default" on an earlier annexation plan of services before the appellants could legally assert that "default" as a Tennessee Code Annotated section 6-51-102(b)(5) bar in the current quo warranto annexation challenge. The City stated it had no notice of Greene's claim until he testified as a surprise rebuttal witness at the Area #1 trial.

The trial court granted the City's motion to dismiss on the grounds that the statutory amendments to the provisions of Tennessee Code Annotated section 6-51-102(b)(5) and Tennessee Code Annotated section 6-51-108(d), upon which the appellants were relying to support their amended declaratory judgment claim that the City was barred from annexing the Area #2 properties, had been added to the state's annexation statues by Chapter 1101 of the 1998 Session Laws and could not be retroactively applied to the City's alleged default on any pre-1998 annexation plan of services. The trial court did not rule on the City's alternative arguments. From the bench, the court made the following observations:

> Well, here's what I think. I think the Motion to Dismiss is good and I will sustain it. Number one, I think that the [sic] 6-51-102(b)(5) came into the Statute in 1998.

> But I do not think that the Statute can or should be construed to hold that a default on a Plan of Services, assuming there was a default on Plan of Services of a 1985 Annexation could constitute a defense to a post 1998 Annexation.

> In other words, I agree with Mr. DeVault and Mr. Hurst *that the Statute must be given prospective effect and that to give the Statute prospective effect it must be construed to mean that any defaults on Plans of Services which would constitute a bar to other annexations must be defaults on post 1998 Annexations.*

> In other words, defaults after the Cities across the State of Tennessee, including Newport, were given notice that, look, if you're in default on a Plan of Services you won't be able to annex anything else. That's what I think.

. . . [O]f course that's dispositive of the motion by itself. I might say this, on the issue of whether or not 6-51-102(b)(5), that is the section which would make a defense to an Annexation, that there was a default in a previous Plan of Services.

***On the issue of whether that Section means the same thing as 6-51-108(d). That is to say that you have to go through the 6-51-108(d) procedure and have a hearing and have the City determined to be in the default, before that default can be asserted as a defense to an Annexation, that's a closer question in the Court's mind.***

Because I have listened to both sides and it could be, it could be construed either way. Quite frankly, in the way that Mr. DeVault would have it and believes it should be construed is, look, 6-51-102(b)(5) quite simply is the same thing, means the same thing as 6-51-108(d). It's just telling you that when you go through that 108(d) procedure there is the defense available under 102(b)(5).

It could be construed that way. His argument is, look, Judge, they both came in, both of those Sections came in in the same Act in 1998. You've got to read them together, and when you read them together that is the proper construction to arrive at the intention of the Legislature.

On the other hand, Mr. Buuck argues that, as we've talked about, well, look, Judge, it's not necessarily that way at all. It could be aimed at the fact that there are two separate Sections, neither one of them referring to the other, neither one of them incorporating the other, could mean and in Mr. Buuck's opinion does mean that they're aimed at separate interests.

108 is aimed at the interest of the aggrieved property owner in the last Annexation, who hasn't been provided with the Plan of Services, and gives him a way to force the City to give him his Plan of Services, and by the way, a way to enjoin the City from any further Annexations.

***But 102(b)5 is aimed at an altogether different interest, and that is the interest of the people in the new Annexation, who may use that failure in the Plan of Services under the old Annexation for an entirely different purpose***, that is, not to force the City to, not to force the City to give the services at all, to the people in the old Annexation, because they may not have even sued for it.

Those people in the old Annexation may not have even sued for it, as Mr. Greene here, has not. ***But rather on behalf of the people in the new annexed area to give them a defense to themselves being annexed. So, that's a close question to me.***

And I suppose in the absence of any Legislative history, which would tell me how are those two Sections to be construed, and I those two, how those two Sections are to be construed is ambiguous, I'll just tell you, that's my opinion.

In the absence of any Legislative history to tell me how they're to be construed I'd be inclined to agree with Mr. Buuck, that the two Sections are aimed at two different interests, and that if they were meant to be interconnected. . . .

***If 6-51-102(b)(5) were aimed only at the same thing that 6-51-108(d) was aimed at, then why would you need 102(b)5 at all, why would you need it, why would the Legislature not have just left it out.***

***If the only procedure you've got to stop the City from annexing because of the failure in a prior Plan of Services is that injunction procedure in 108(d). If that's the only procedure you've got, then why would you even need 102(b)(5).***

However, I do think on the, I do agree with, I said earlier, I do agree with Mr. DeVault and Mr. Hurst on the retroactivity argument that, I cannot construe this Statute to mean that a default in a Plan of Services under a 1985 Annexation, assuming there was a default, can constitute a defense to a post 1998 Annexation.

And so, and by the way, on the, I do also agree with Mr. DeVault and Mr. Hurst on the matter of the, assuming the City failed to file the required, the Annual Reports on Annexation.

There's nothing about that Statute that indicates at all that any such failure was intended to be or should be construed to be a defense to an Annexation, and indeed that Statute provides a remedy for failures by the City to comply with it. And the remedy does not include a prohibition against further Annexations.
. . .

(Emphasis added.). The trial court noted in its final judgment:

Because of the significance of the annexation plan of service default claims raised by the plaintiffs in their amended complaint and the acknowledgment that a judicial finding that an alleged default by the City on a 1985 annexation plan of services would bar the City from having annexed the plaintiffs' Area #2 properties by ordinance in 2008, independent of the quo warranto proceedings of T.C.A. § 6-51-103, and independent of the burden of proof requirements set out in T.C.A. § 6-58-111 as to the validity of the City's 2008 annexation ordinance and because a judicial finding that the defendant's alleged failure to have published annual reports on the progress of the implementation of its pre-1998 and post-1998 annexation plans of service could also bar the 2008 annexation of the plaintiff[s'] properties, this Court is of the opinion that an immediate appeal of these issues is necessary for the prompt and efficient resolution of this case and is in the best interests of justice. A resolution of these issues by the Tennessee appellate courts will provide this Court and the parties with affirmative judicial direction regarding the scope and extent of the future trial proceedings which will be required in this case. An appeal at this time will preclude the annexation quo warranto challenge from having to be tried a second time at substantial additional expense to the parties and with the additional expenditure of judicial resources. . . .

The appellants filed a timely notice of appeal.

## II. ISSUES

The following issues have been raised in this appeal:

A. Whether a municipality, after the enactment of Tennessee Code Annotated section 6-51-102(b)(5), may annex "any new territory" if it is in default on "any plan of services?"

B. Whether the appellants are entitled to a jury trial to determine any material facts at issue in this declaratory judgment action?

## III. STANDARD OF REVIEW

The trial court dismissed the amended complaint pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure. A Rule 12.02(6) motion tests only the legal sufficiency

of the complaint, not the strength of the proof. The resolution of the motion is determined by an examination of the pleadings alone. *Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). In considering a motion to dismiss, courts must construe the assertions in the complaint liberally; the motion cannot be sustained unless it appears that there are no facts warranting relief. *Cook*, 878 S.W.2d at 938. On appeal, all allegations of fact by the plaintiffs must be taken as true. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

Interpretation of a statute is a question of law, which is reviewed on appeal de novo with no presumption of correctness. *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012); *Brundage v. Cumberland Cnty.*, 357 S.W.3d 361, 364 (Tenn. 2011). In construing an ordinance

> to ascertain whether the actions of the municipality are in compliance with the statute, this Court must ascertain and give effect to the legislative intent and the ordinary meaning of the language of the statutes. *Carson Creek Vacation Resorts, Inc. v. Dept. of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993). Unambiguous statutes must be construed to mean what they say. *Montgomery v. Hoskins*, 222 Tenn. 45, 47, 432 S.W.2d 654, 655 (1968). The "legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used . . . without any forced or subtle construction to limit or extend the import of the language." *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn. 1977); *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn. 1993).

*State ex rel. Earhart v. City of Bristol*, 970 S.W.2d 948, 951 (Tenn. 1998).

## IV. DISCUSSION

### A.

In *Highwoods Properties, Inc. v. City of Memphis*, 297 S.W.3d 695 (Tenn. 2009), the Supreme Court discussed the purposes and goals of the 1998 annexation revisions:

> In 1998 (shortly after the City of Memphis enacted Ordinance No. 4513 in regard to the annexation of Area 42) the General Assembly adopted additional amendments further refining the procedures for annexation and *quo warranto* challenges. Act of May 1, 1998, 1998 Tenn. Pub. Acts 1157 (the "1998 Amendments"); *see also State ex rel. Tipton v. City of Knoxville*, 205 S.W.3d 456, 465-68 (Tenn. Ct. App. 2006) (upholding constitutionality of 1998

Amendments, *perm. app. denied* (Tenn. 2006)). Under the 1998 Amendments, local governments in each county adopt a comprehensive growth plan identifying "urban growth boundaries," "planned growth areas," and "rural areas" therein. Act of May 1, 1998, §§ 1, 5 (codified as amended at Tenn. Code Ann. §§ 6-58-101, -104 (2005)). A municipality may annex an area within its urban growth boundaries using methods established by the 1955 Act, and a property owner challenging that annexation via a *quo warranto* proceeding will bear the burden of showing that the annexation "is unreasonable for the overall well-being of the communities involved" or that "[t]he health, safety, and welfare of the citizens and property owners of the municipality and territory will not be materially retarded in the absence of such annexation." Act of May 1, 1998, § 12(a) (codified as amended at Tenn. Code Ann. § 6-58-111(a) Supp. 2008)). Moreover, the case will be heard without a jury. Tenn. Code Ann. § 6-58-111(b). If, however, the municipality wishes to annex an area outside its growth boundaries, it must either propose an amendment to the growth plan or rely on the referendum annexation method. Act of May 1, 1998, § 6-58-111(c)(d) (2008)). Thus, the 1998 Amendments reflect a balance. While, on one hand, the new restrictions discourage annexations that extend beyond a city's predicted area of growth, on the other, the 1998 Amendments assure that a municipality will not bear the burden of proof in a *quo warranto* challenge when it does exercise its power within predicted boundaries. *See Tipton*, 205 S.W.3d at 460 (discussing "significant differences" in *quo warranto* procedures under the 1998 Amendments and the "older framework").

*Highwoods Props.*, 297 S.W.3d at 706-707. This case involves the annexation of territory within the City's urban growth boundary. The City therefore contends that the provisions of 6-51-111 present the exclusive judicial mechanism by which aggrieved property owners like the appellants may challenge the annexation.

Tennessee Code Annotated section 6-58-111 states:

(a) [*A municipality possesses exclusive authority to annex territory located within its approved urban growth boundaries; therefore, no municipality may annex by ordinance or by referendum any territory located within another municipality's approved urban growth boundaries.*][2] Within a municipality's approved urban growth boundaries, a municipality may use any of the methods

---

[2] The bracketed and italicized language was added by Section 1 of Chapter 246 of the Session Laws of 2005.

in chapter 51 of this title to annex territory; provided, that if a quo warranto action is filed to challenge the annexation, the party filing the action has the burden of proving that:

(1) An annexation ordinance is unreasonable for the overall well-being of the communities involved; or

(2) The health, safety, and welfare of the citizens and property owners of the municipality and territory will not be materially retarded in the absence of such annexation.

(b) In any such action, the action shall be tried by the circuit court judge or chancellor without a jury.

Tenn. Code Ann. § 6-58-111.

Tennessee Code Annotated section 6-51-102(b)(5) provides that a municipality cannot annex additional properties if it is "in default" on any earlier annexation plan of services:

A municipality may not annex any other territory if the municipality is in default on any prior plan of services.

Tenn. Code Ann. § 6-51-102(b)(5). Read in a vacuum, the statute does not explain how anyone is supposed to establish that a city is actually "in default," who has the legal standing to complain initially that a city is "in default," or what criteria has to be utilized in order to determine whether a city may actually be adjudged to be "in default."

At the same time Tennessee Code Annotated section 6-51-102, was amended, the legislature enacted new provisions codified at Tennessee Code Annotated section 6-51-108(d) that grant any current municipal property owner who claims his property has been denied municipal services promised him in an earlier plan of services standing to file and pursue an action against the city. The statute provides:

(d) An aggrieved property owner in the annexed territory may bring an action in the appropriate court of equity jurisdiction to enforce the plan of services at any time after one hundred eighty (180) days after an annexation by ordinance takes effect and until the plan of services is fulfilled, and may bring an action to challenge the legality of an amendment to a plan of services if such action is brought within thirty (30) days after the adoption of the amendment to the plan of services. If the court finds that the municipality has amended the plan

-11-

of services in an unlawful manner, then the court shall decree the amendment null and void and shall reinstate the previous plan of services. If the court finds that the municipality has materially and substantially failed to comply with its plan of services for the territory in question, then the municipality shall be given the opportunity to show cause why the plan of services was not carried out. If the court finds that the municipality's failure is due to natural disaster, act of war, act of terrorism, or reasonably unforeseen circumstances beyond the control of the municipality that materially and substantially impeded the ability of the municipality to carry out the plan of services, then the court shall alter the timetable of the plan of services so as to allow the municipality to comply with the plan of services in a reasonable time and manner. If the court finds that the municipality's failure was not due to natural disaster, act of war, act of terrorism, or reasonably unforeseen circumstances beyond the control of the municipality that materially and substantially impeded the ability of the municipality to carry out the plan of services, then the court shall issue a writ of mandamus to compel the municipality to provide the services contained in the plan, shall establish a timetable for the provision of the services in question, and shall enjoin the municipality from any further annexations until the services subject to the court's order have been provided to the court's satisfaction, at which time the court shall dissolve its injunction. If the court determines that the municipality has failed without cause to comply with the plan of services or has unlawfully amended its plan of services, the court shall assess the costs of the suit against the municipality.

Tenn. Code Ann. § 6-51-108(d).

The City contends that the appellants' complaint was brought under the provisions of Tennessee Code Annotated section 6-51-111, and that the appellants cannot graft their claim regarding the annexation plan of services "default" bar onto the quo warranto "reasonableness" and "necessary" criteria. It contends section 6-51-108(d) describes the only process to establish default by a city and argues that the amended claim fails to state a claim upon which relief can be granted under Rule 12.02(6) of the Tennessee Rules of Civil Procedure.

The appellants contend that the ordinary meaning of Tennessee Code Annotated section 6-51-102(b)(5) is clear – a municipality may not annex "any other territory" if the municipality is in default on "any prior plan of services." They assert that the legislature added the statute as a mandatory pre-condition of annexation.

Declaratory relief was allowed in *State of Tennessee, ex rel. Earhart v. City of Bristol*,

-12-

970 S.W.2d 948 (Tenn. 1998). In that case, the quo warranto plaintiffs challenged the validity of a prior annexation ordinance. The Court noted:

> ". . . But if quo warranto is not an adequate remedy, it will not be a bar to alternative remedies." 65 Am. Jur.2d *Quo Warranto* § 7 (1972). The availability of other remedies is specifically acknowledged in section 6-51-113 (1992), which provides, "Except as specifically provided in this part, the powers conferred by this part shall be in addition and supplemental to, and the limitations imposed by this part shall not affect the powers conferred by any other general, special or local law." The Tennessee Declaratory Judgment Act is just such another general law conferring the power to challenge the validity and construction of statutes and municipal ordinances. Under the Declaratory Judgment Act,
>
>> Any person . . . whose rights, status, or other legal relations are affected by a statute, [or] municipal ordinance, . . . may have determined any question of construction or validity arising under the . . . statute, [or] ordinance, . . . and obtain a declaration of rights, status or other legal relations thereunder. Tenn. Code Ann. § 29-14-103(1980).

*Earhart*, 970 S.W.2d at 952-953. The Court sent the case back to the trial court for a determination of the validity of the prior ordinance.

In our view, the appellants may pursue their declaratory judgment claim. They are challenging the validity of the City's 2008 annexation ordinance alleged to exceed the authority delegated by the legislature pursuant to Tennessee Code Annotated section 6-51-102(b)(5). *See Earhart*, 970 S.W.2d at 954.[3] Further, the remedy available to the appellants by quo warranto is ineffective to contest the relevant issue. The claim is not a procedural defect; the appellants have raised a colorable claim that the ordinance is void pursuant to the statute. *See Highwoods Props.*, 297 S.W.3d at 708-709. We further note that the City has conceded that the quo warranto statute provides no remedy to the appellants for the City's default in a prior plan of services and that the appellants cannot assert a "plan of services default" bar under the annexation quo warranto statute.

---

[3]We presume that the legislature is aware of the *Earhart* decision and that case's reliance upon Tennessee Code Annotated section 6-51-113 as support for the declaratory judgment remedy. By re-enacting the statute without revision, we conclude the legislature approved the utilization of declaratory judgment in certain annexation matters.

Of course, the City does not agree with the appellants that it is "in default" on any earlier plan of services, including Greene's 1985 annexation plan of services. There are obviously disputed issues of fact in this case and the City is entitled to a trial before it can be legally declared in default" on any earlier annexation plan of services and be barred from exercising its statutory right to annex. Therefore, if the trial court erred in its retroactivity analysis, this case must be remanded for trial on the declaratory judgment claim.

According to the City, annexations that took place in the 1980s and early 1990s are not within the purview of the 1998 "plan of services default" provision. The appellants contend that they do not seek any retroactive application of the statute, as they are not asking the City to comply with Greene's plan of services. They assert that Greene is simply a witness in this case to the fact that the City is in default on a prior plan of services within the meaning of the statute. The appellants seek to invalidate the 2008 ordinances. Thus, the appellants' claim requires only a prospective application of section 6-51-102(b)(5).

We find that the 1998 provisions do include compliance with the City's earlier plans of services and conclude that the trial court erred in dismissing the appellants' declaratory judgment claim on the basis of improper retroactive application of Tennessee Code Annotated section 6-51-102(b)(5). Thus, we must reverse the judgment and remand this action to the trial court. We express no opinion as to the eventual result of this litigation after further proceedings.

B.

The trial court initially ruled that the appellants were not entitled to a jury trial as requested because the matter was brought as a quo warranto proceeding under Tennessee Code Annotated section 6-58-111(b). The trial court subsequently permitted the appellants to amend the complaint to challenge the plan of services default issue pursuant to the Declaratory Judgment Act, Tennessee Code Annotated section 29-14-101, et seq. Trial by jury is authorized in declaratory judgment actions pursuant to Rule 57 of the Tennessee Rules of Civil Procedure:

> The procedure for obtaining a declaratory judgment pursuant to Tenn. Code Ann. 29-14-101 et seq., shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not necessarily preclude a judgment for declaratory relief in cases where it is appropriate. . . .

Further, as noted in Tennessee Code Annotated section 21-1-103, "[e]ither party to a suit in

chancery is entitled, upon application, to a jury to try and determine any material fact in dispute . . . ." The City did not respond to this issue or otherwise oppose the right to a jury trial to address the material factual issues necessary to determine the prior plan of services default issue. We find that a jury is authorized.

## V. CONCLUSION

The judgment of the trial court is reversed. We remand this matter to the trial court to determine any and all factual issues necessary concerning the validity of the ordinances at issue, including whether the City is in default on any prior services. Trial by a jury is authorized. Costs on appeal are taxed to the City of Newport, Tennessee.


_____
JOHN W. McCLARTY, JUDGE